## UNITED STATES *v.* MARION ET AL.

No. 70–19. Argued November 8, 1971—Decided December 20, 1971

*Deputy Solicitor General Greenawalt* argued the cause for the United States. With him on the briefs were *Solicitor General Griswold, Assistant Attorney General Wilson, Acting Assistant Attorney General Petersen, Beatrice Rosenberg,* and *Mervyn Hamburg.*

*Thomas Penfield Jackson* argued the cause for appellees and filed a brief for appellee Marion. *Benjamin Wright Cotten* filed a brief for appellee Cratch.

*Alan Y. Cole* and *Isaac N. Groner* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

MR. JUSTICE WHITE delivered the opinion of the Court.

This appeal requires us to decide whether dismissal of a federal indictment was constitutionally required by reason of a period of three years between the occurrence of the alleged criminal acts and the filing of the indictment.

On April 21, 1970, the two appellees were indicted and charged in 19 counts with operating a business known as Allied Enterprises, Inc., which was engaged in the business of selling and installing home improvements such as intercom sets, fire control devices, and burglary detection systems. Allegedly, the business was fraudu-

lently conducted and involved misrepresentations, alterations of documents, and deliberate nonperformance of contracts. The period covered by the indictment was March 15, 1965, to February 6, 1967; the earliest specific act alleged occurred on September 3, 1965, the latest on January 19, 1966.

On May 5, 1970, appellees filed a motion to dismiss the indictment "for failure to commence prosecution of the alleged offenses charged therein within such time as to afford [them their] rights to due process of law and to a speedy trial under the Fifth and Sixth Amendments to the Constitution of the United States." No evidence was submitted, but from the motion itself and the arguments of counsel at the hearing on the motion, it appears that Allied Enterprises had been subject to a Federal Trade Commission cease-and-desist order on February 6, 1967, and that a series of articles appeared in the Washington Post in October 1967, reporting the results of that newspaper's investigation of practices employed by home improvement firms such as Allied. The articles also contained purported statements of the then United States Attorney for the District of Columbia describing his office's investigation of these firms and predicting that indictments would soon be forthcoming. Although the statements attributed to the United States Attorney did not mention Allied specifically, that company was mentioned in the course of the newspaper stories. In the summer of 1968, at the request of the United States Attorney's office, Allied delivered certain of its records to that office, and in an interview there appellee Marion discussed his conduct as an officer of Allied Enterprises. The grand jury that indicted appellees was not impaneled until September 1969, appellees were not informed of the grand jury's concern with them until March 1970, and the indictment was finally handed down in April.

Appellees moved to dismiss because the indictment was returned "an unreasonably oppressive and unjustifiable time after the alleged offenses." They argued that the indictment required memory of many specific acts and conversations occurring several years before, and they contended that the delay was due to the negligence or indifference of the United States Attorney in investigating the case and presenting it to a grand jury. No specific prejudice was claimed or demonstrated. The District Court judge dismissed the indictment for "lack of speedy prosecution" at the conclusion of the hearing and remarked that since the Government must have become aware of the relevant facts in 1967, the defense of the case "is bound to have been seriously prejudiced by the delay of at least some three years in bringing the prosecution that should have been brought in 1967, or at the very latest early 1968." [1]

---

[1] App. 39. The court's oral decision consisted of the following statement: "It appears to the Court that the matters complained of occurred between March 1965 and January 1966. It further appears that these matters were known from early 1967 or a matter of common knowledge in late 1967. There appears no reason why a three-year delay from 1967 was justified by the necessity of research and examination delving into the various transactions, they could have been discovered and handled much, much sooner, certainly probably during the year 1967 or at the latest early 1968.

"The defendants have been indicted on 19 counts, each of which I believe carries a ten-year sentence, each of which is a separate, distinct transaction which would justify consecutive sentences, and by the very nature of this outrageous scheme if the allegations could be believed, the ability to remember, to build up in one's recollection, to produce the necessary defense, is bound to have been seriously prejudiced by the delay of at least some three years in bringing the prosecution that should have been brought in 1967, or at the very latest early 1968.

"The Court, therefore, views that there has been a lack of speedy prosecution in this case, and will grant the motion to dismiss." *Ibid.*

The United States appealed directly to this Court pursuant to 18 U. S. C. § 3731 (1964 ed., Supp. V).[2] We postponed consideration of the question of jurisdiction until the hearing on the merits of the case.[3] We now hold that the Court has jurisdiction, and on the merits we reverse the judgment of the District Court.

I

Prior to its recent amendment, 18 U. S. C. § 3731 (1964 ed., Supp. V) authorized an appeal to this Court

---

[2] The Criminal Appeals Act, 18 U. S. C. § 3731 (1964 ed., Supp. V), at the time of this appeal, provided in relevant part:

"An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

. . . . .

"From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy."

The Omnibus Crime Control Act of 1970, § 14 (a), 84 Stat. 1890, amended the Criminal Appeals Act to read in pertinent part as follows:

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

This amendment thus terminated the Court's appellate jurisdiction of Government appeals from district court judgments in federal criminal cases. Pending cases were not affected by the amendment, however, since subsection (b) of § 14 provides:

"The amendments made by this section shall not apply with respect to any criminal case begun in any district court before the effective date of this section."

The Omnibus Crime Control Act of 1970 took effect on January 2, 1971; the appellees in this case were indicted on April 21, 1970.

[3] 401 U. S. 934 (1971).

by the United States when in any criminal case a district court sustained "a motion in bar, when the defendant has not been put in jeopardy." It is plain to us that the appeal of the United States is within the purview of this section. Appellees had not been placed in jeopardy when the District Court rendered its judgment. The trial judge based his ruling on undue delay prior to indictment, a matter that was beyond the power of the Government to cure since re-indictment would not have been permissible under such a ruling. The motion to dismiss rested on grounds that had nothing to do with guilt or innocence or the truth of the allegations in the indictment but was, rather, a plea in the nature of confession and avoidance, that is, where the defendant does not deny that he has committed the acts alleged and that the acts were a crime but instead pleads that he cannot be prosecuted because of some extraneous factor, such as the running of the statute of limitations or the denial of a speedy trial. See *United States* v. *Weller,* 401 U. S. 254, 260 (1971). The motion rested on constitutional grounds exclusively, and neither the motion, the arguments of counsel, the Court's oral opinion, nor its judgment mentioned Federal Rule of Criminal Procedure 48 (b), as a ground for dismissal.[4] Our jurisdiction to hear this appeal has been satisfactorily established.

---

[4] Rule 48 (b) provides that: "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint." In any event, it is doubtful that Rule 48 (b) applies in the circumstances of this case, where the indictment was the first formal act in the criminal prosecution of these appellees. See cases cited in n. 11, *infra.*

## II

Appellees do not claim that the Sixth Amendment was violated by the two-month delay between the return of the indictment and its dismissal. Instead, they claim that their rights to a speedy trial were violated by the period of approximately three years between the end of the criminal scheme charged and the return of the indictment; it is argued that this delay is so substantial and inherently prejudicial that the Sixth Amendment required the dismissal of the indictment. In our view, however, the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an "accused," an event that occurred in this case only when the appellees were indicted on April 21, 1970.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time. The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him. "[T]he essential ingredient is orderly expedition and not mere speed." *Smith* v. *United States,* 360 U. S. 1, 10 (1959).

Our attention is called to nothing in the circumstances surrounding the adoption of the Amendment indicating

that it does not mean what it appears to say,[5] nor is there more than marginal support for the proposition that, at the time of the adoption of the Amendment, the prevailing rule was that prosecutions would not be permitted if there had been long delay in presenting a charge.[6] The framers could hardly have selected less

---

[5] The history of the speedy trial provision is sparse and unilluminating with respect to the issue before us. See F. Heller, The Sixth Amendment to the Constitution of the United States 31–32, 34 (1951); R. Rutland, The Birth of the Bill of Rights, 1776–1791, p. 202 (1955); I. Brant, The Bill of Rights 223 (1965); Dumbauld, State Precedents for the Bill of Rights, 7 J. Pub. L. 323, 335 n. 91 (1958); Note, The Right to a Speedy Trial, 20 Stan. L. Rev. 476, 484 (1968).

[6] A single case that antedates the Bill of Rights, *Rex* v. *Robinson*, 1 Black. W. 541, 96 Eng. Rep. 313 (K. B. 1765), and three 19th century British cases, *Rex* v. *Marshall*, 13 East 322, 104 Eng. Rep. 394 (K. B. 1811); *Regina* v. *Hext*, 4 Jurist 339 (Q. B. 1840); *Regina* v. *Robins*, 1 Cox's C. C. 114 (Somerset Winter Assizes 1844), are cited for the proposition that the framers intended to protect against pre-indictment delay by enacting the Sixth Amendment. These cases fail to establish a definite rule that the Founders sought to constitutionalize, however, and the Government's argument concerning the history of the Sixth Amendment, while not dispositive, is more persuasive. Brief for the United States 15–18. The Government points out that the Habeas Corpus Act of 1679, 31 Car. 2, c. 2, provided for "more speedy Relief of all Persons imprisoned for any such criminal or supposed criminal Matters" and required that persons jailed for felonies or treason be brought to trial upon their own motion within two terms of court or be discharged on bail. The Act does not allude to delay before arrest. Most of the States that ratified the Bill of Rights had either adopted the British Act or passed a similar law, *Petition of Provoo*, 17 F. R. D. 183, 197 n. 6 (Md.), aff'd *sub nom. United States* v. *Provoo*, 350 U. S. 857 (1955), and many of them had speedy trial provisions in their own constitutions which were modeled on the British Act. Article 8 of the Virginia Declaration of Rights, which may have been the model Madison used for the Sixth Amendment, Rutland, *supra,* n. 5, at 202, secured the right to a speedy trial in "criminal prosecutions" where "a man hath a

appropriate language if they had intended the speedy trial provision to protect against pre-accusation delay. No opinions of this Court intimate support for appellees' thesis,[7] and the courts of appeals that have considered the question in constitutional terms have never reversed a conviction or dismissed an indictment solely on the basis of the Sixth Amendment's speedy trial provision where only pre-indictment delay was involved.[8]

right to demand the cause and nature of his accusation." See generally Heller, *supra*, n. 5, at 23. Insofar as this meager evidence is probative at all, it seems to imply that the Sixth Amendment was designed to assure that those accused of crimes would have their trial without undue delay.

[7] This Court has interpreted the Sixth Amendment's speedy trial guarantee in only a small number of cases. See, *e. g.*, *Dickey* v. *Florida*, 398 U. S. 30 (1970); *Smith* v. *Hooey*, 393 U. S. 374 (1969); *Klopfer* v. *North Carolina*, 386 U. S. 213 (1967); *United States* v. *Ewell*, 383 U. S. 116 (1966); *Pollard* v. *United States*, 352 U. S. 354 (1957); *United States* v. *Provoo, supra*, n. 6; *Beavers* v. *Haubert*, 198 U. S. 77 (1905). See also *Smith* v. *United States*, 360 U. S. 1, 10 (1959).

[8] Most courts of appeals have recognized the Sixth Amendment right to a speedy trial only after a prosecution has been formally initiated or have held that the sole safeguard against pre-indictment delay is the relevant statute of limitations: *United States* v. *Feinberg*, 383 F. 2d 60, 65 (CA2 1967); *Carlo* v. *United States*, 286 F. 2d 841, 846 (CA2), cert. denied, 366 U. S. 944 (1961); *Pitts* v. *North Carolina*, 395 F. 2d 182, 185 n. 3 (CA4 1968); *United States* v. *Durham*, 413 F. 2d 1003, 1004 (CA5 1969); *Kroll* v. *United States*, 433 F. 2d 1282, 1286 (CA5 1970), cert. denied, 402 U. S. 944 (1971); *United States* v. *Grayson*, 416 F. 2d 1073, 1076–1077 (CA5 1969); *United States* v. *Wilson*, 342 F. 2d 782, 783 (CA5), cert. denied, 382 U. S. 860 (1965); *Donnell* v. *United States*, 229 F. 2d 560, 567 (CA5 1956); *Harlow* v. *United States*, 301 F. 2d 361, 366 (CA5), cert. denied, 371 U. S. 814 (1962); *Bruce* v. *United States*, 351 F. 2d 318, 320 (CA5 1965), cert. denied, 384 U. S. 921 (1966); *Hoopengarner* v. *United States*, 270 F. 2d 465, 469 (CA6 1959); *United States* v. *Harris*, 412 F. 2d 471, 473 (CA6 1969); *Lothridge* v. *United States*, 441 F. 2d 919, 922 (CA6 1971); *Parker* v. *United States*, 252 F. 2d 680, 681

Legislative efforts to implement federal and state speedy trial provisions also plainly reveal the view that these guarantees are applicable only after a person has

(CA6), cert. denied, 356 U. S. 964 (1958); *Edmaiston* v. *Neil*, 452 F. 2d 494 (CA6 1971); *United States* v. *Panczko*, 367 F. 2d 737, 738–739 (CA7 1966); *Terlikowski* v. *United States*, 379 F. 2d 501, 504 (CA8), cert. denied, 389 U. S. 1008 (1967); *Foley* v. *United States*, 290 F. 2d 562, 565 (CA8 1961); *Benson* v. *United States*, 402 F. 2d 576, 579 (CA9 1968); *Venus* v. *United States*, 287 F. 2d 304, 307 (CA9 1960), rev'd *per curiam* on other grounds, 368 U. S. 345 (1961); *D'Aquino* v. *United States*, 192 F. 2d 338, 350 (CA9 1951), cert. denied, 343 U. S. 935 (1952); *United States* v. *Reed*, 413 F. 2d 338, 340 (CA10 1969), cert. denied *sub nom.* *Sartain* v. *United States*, 397 U. S. 954 (1970); *Nickens* v. *United States*, 116 U. S. App. D. C. 338, 340, 323 F. 2d 808, 810 (1963), cert. denied, 379 U. S. 905 (1964). Some courts of appeals have stated that pre-indictment delay may be cause for dismissal but they have seemed to treat the question primarily as one of due process (although the Sixth Amendment is occasionally mentioned) and have required a showing of actual prejudice: *Schlinsky* v. *United States*, 379 F. 2d 735, 737 (CA1 1967); *Fleming* v. *United States*, 378 F. 2d 502, 504 (CA1 1967); *United States* v. *Capaldo*, 402 F. 2d 821, 823 (CA2 1968), cert. denied, 394 U. S. 989 (1969); *United States* v. *Simmons*, 338 F. 2d 804, 806 (CA2 1964), cert. denied, 380 U. S. 983 (1965); *United States* v. *Holiday*, 319 F. 2d 775, 776 (CA2 1963); *United States* v. *Hammond*, 360 F. 2d 688, 689 (CA2 1966); *United States* v. *Dickerson*, 347 F. 2d 783, 784 (CA2 1965); *United States* v. *Rivera*, 346 F. 2d 942, 943 (CA2 1965); *United States* v. *Sanchez*, 361 F. 2d 824, 825 (CA2 1966); *United States* v. *Harbin*, 377 F. 2d 78, 79, 80 n. 1 (CA4 1967); *United States* v. *Lee*, 413 F. 2d 910, 912–913 (CA7 1969), cert. denied, 396 U. S. 1022 (1970); *United States* v. *Napue*, 401 F. 2d 107, 114–115 (CA7 1968), cert. denied, 393 U. S. 1024 (1969); *Lucas* v. *United States*, 363 F. 2d 500, 502 (CA9 1966); *Sanchez* v. *United States*, 341 F. 2d 225, 228 n. 3 (CA9), cert. denied, 382 U. S. 856 (1965); *Acree* v. *United States*, 418 F. 2d 427, 430 (CA10 1969). Although *Petition of Provoo*, 17 F. R. D. 183 (Md.), aff'd *sub nom.* *United States* v. *Provoo*, 350 U. S. 857 (1955), is sometimes cited for the proposition that pre-indictment delay will justify dismissal, the District Court explicitly stated that it considered this delay to be relevant only on the issue of whether the

been accused of a crime. The Court has pointed out that "[a]t the common law and in the absence of special statutes of limitations the mere failure to find an indictment will not operate to discharge the accused from the offense nor will a *nolle prosequi* entered by the Government or the failure of the grand jury to indict." *United States* v. *Cadarr,* 197 U. S. 475, 478 (1905). Since it is "doubtless true that in some cases the power of the Government has been abused and charges have been kept hanging over the

defendant had been denied a fair trial. 17 F. R. D., at 202. In *Taylor* v. *United States,* 99 U. S. App. D. C. 183, 238 F. 2d 259 (1956), a conviction was vacated where there had been a six-year delay between the crime (housebreaking) and trial, 3½ years of which was a delay between crime and indictment; the defendant had been in prison on another charge during this time, and the defendant was substantially prejudiced in his ability to defend against the housebreaking charge. The Court of Appeals stated: "We do not rely on the mere lapse of time between the commission of the offenses and the date of indictment, considered by itself, for that is governed by the statute of limitations. It is the combination of the factors set forth above [post-indictment delay, prejudice] which motivates our decision." *Id.,* at 186, 238 F. 2d, at 262. In three instances district courts have held, however, that "delay" for Sixth Amendment purposes must be computed from the time of the crime or from the time when the Government considers the defendants' actions criminal, and have dismissed indictments for excessive delay. *United States* v. *Parrott,* 248 F. Supp. 196 (DC 1965); *United States* v. *Wahrer,* 319 F. Supp. 585 (Alaska 1970); *United States* v. *Burke,* 224 F. Supp. 41 (DC 1963). There is a unique line of cases in the District of Columbia Circuit concerning pre-indictment delay in narcotics cases where the Government relies on secret informers and (frequently) on single transactions. These cases take a more rigid stance against such delays, but they are based on the Court of Appeals' purported supervisory jurisdiction and not on the Sixth Amendment. See, *e. g., Ross* v. *United States,* 121 U. S. App. D. C. 233, 238, 349 F. 2d 210, 215 (1965); *Bey* v. *United States,* 121 U. S. App. D. C. 337, 350 F. 2d 467 (1965); *Powell* v. *United States,* 122 U. S. App. D. C. 229, 231, 352 F. 2d 705, 707 (1965); *Tynan* v. *United States,* 126 U. S. App. D. C. 206, 208, 376 F. 2d 761, 763 (1967) (explicitly limiting *Ross*).

heads of citizens, and they have been committed for unreasonable periods, resulting in hardship," the Court noted that many States "[w]ith a view to preventing such wrong to the citizen . . . [and] in aid of the constitutional provisions, National and state, intended to secure to the accused a speedy trial" had passed statutes limiting the time within which such trial must occur after charge or indictment.[9] Characteristically, these statutes to which the Court referred are triggered only when a citizen is charged or accused.[10] The statutes vary greatly in sub-

---

[9] The provision the Court dealt with in *Cadarr* was § 939 of the then District of Columbia Code adopted by Congress, 31 Stat. 1342. That section provided that if any person "charged with a criminal offense shall have been committed or held to bail," the grand jury must act within a specified time or the accused would be set free. The provision remains in the present code as § 23–102, 84 Stat. 605, and then, as now, does not purport to reach behind the time of charge, commitment, or holding for bail.

[10] See, *e. g.*, Ill. Rev. Stat., c. 38, § 103–5 (a) (1969); Pa. Stat. Ann., Tit. 19, § 781 (1964); Cal. Pen. Code § 1382 (1970); Va. Code Ann. § 19.1–191 (1960); Nev. Rev. Stat. § 178.556 (1967). A more comprehensive list of such state statutes appears in American Bar Association Project on Standards for Criminal Justice, Speedy Trial 14–15 (Approved Draft 1968). The Administrative Board of the Judicial Conference of the State of New York recently promulgated rules on trial delay and detention which cover defendants who are "held in custody" and which begin computation of delay periods from the date of arrest. Rule 29.1, New York Law Journal, April 30, 1971, p. 1, col. 6. See generally Note, The Right to a Speedy Trial, 20 Stan. L. Rev. 476 (1968); Note, Pre-Arrest Delay: Evolving Due Process Standards, 43 N. Y. U. L. Rev. 722 (1968); Note, Constitutional Limits on Pre-Arrest Delay, 51 Iowa L. Rev. 670 (1966); Note, The Lagging Right to a Speedy Trial, 51 Va. L. Rev. 1587 (1965); Note, Justice Overdue—Speedy Trial for the Potential Defendant, 5 Stan. L. Rev. 95 (1952).

The rules that the Second Circuit *en banc* recently adopted in *United States ex rel. Frizer* v. *McMann*, 437 F. 2d 1312 (CA2 1971), which appear in Appendix, 28 U. S. C. A. (May 1971 Supp.), require trial within a specified period but apply to "all persons held in jail

stance, structure, and interpretation, but a common denominator is that "[i]n no event . . . [does] the right to speedy trial arise before there is some charge or arrest, even though the prosecuting authorities had knowledge of the offense long before this." Note, The Right to a Speedy Trial, 57 Col. L. Rev. 846, 848 (1957).

No federal statute of general applicability has been enacted by Congress to enforce the speedy trial provision of the Sixth Amendment, but Federal Rule of Criminal Procedure 48 (b), which has the force of law, authorizes dismissal of an indictment, information, or complaint "[i]f there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial . . . ." The rule clearly is limited to post-arrest situations.[11]

Appellees' position is, therefore, at odds with long-standing legislative and judicial constructions of the

---

prior to trial" and "defendants" in "all other criminal cases." Rule 2. Rule 4 provides that: "In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest." See generally Comment, Speedy Trials and the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, 71 Col. L. Rev. 1059 (1971).

Cf. also S. 895, 92d Cong., 1st Sess., a bill intended "[t]o give effect to the sixth amendment right to a speedy trial for persons charged with offenses against the United States." The protections of the bill are engaged "within sixty days from the date the defendant is arrested or a summons is issued, except that if an information or indictment is filed, then within sixty days from the date of such filing." § 3161 (b) (1).

[11] *Nickens* v. *United States, supra,* at 339, 323 F. 2d, at 809; *Harlow* v. *United States, supra; Hoopengarner* v. *United States, supra; United States* v. *Hoffa,* 205 F. Supp. 710, 720–721 (SD Fla. 1962).

speedy trial provisions in both national and state constitutions.

## III

It is apparent also that very little support for appellees' position emerges from a consideration of the purposes of the Sixth Amendment's speedy trial provision, a guarantee that this Court has termed "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States* v. *Ewell,* 383 U. S. 116, 120 (1966); see also *Klopfer* v. *North Carolina,* 386 U. S. 213, 221–226 (1967); *Dickey* v. *Florida,* 398 U. S. 30, 37–38 (1970). Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. These considerations were substantial underpinnings for the decision in *Klopfer* v. *North Carolina, supra;* see also *Smith* v. *Hooey,* 393 U. S. 374, 377–378 (1969). So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

Invocation. of the speedy trial provision thus need not await indictment, information, or other formal charge.[12] But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself.[13] But this

---

[12] In its Standards Relating to Speedy Trial, n. 10, *supra,* at 6, the ABA defined the time at which the beginning of the delay period should be computed as

"the date the charge is filed, except that if the defendant has been continuously held in custody or on bail or recognizance until that date to answer for the same crime or a crime based on the same conduct or arising from the same criminal episode, then the time for trial should commence running from the date he was held to answer." Rule 2.2 (a).

Under the ABA Standards, after a defendant is charged, it is contemplated that his right to a speedy trial would be measured by a statutory time period excluding necessary and other justifiable delays; there is no necessity to allege or show prejudice to the defense. Rule 2.1, *ibid.*

[13] Extending a Sixth Amendment right to a period prior to indictment or holding to answer would also create procedural problems: "[W]hile other rights may be violated by delay in arrest or charge, it does not follow that the time for trial should be counted from any date of inaction preceding filing of the charge or holding the defendant to answer. To recognize a general speedy trial right commencing as of the time arrest or charging was possible would have unfortunate consequences for the operation of the criminal justice system. Allowing inquiry into when the police could have arrested or when the prosecutor could have charged would raise difficult problems of proof. As one court said, 'the Court would be engaged in lengthy hearings in every case to determine whether or not the prosecuting authorities had proceeded diligently or otherwise.' [*United States* v. *Port,* Crim. No. 33162, (ND Cal., June 2,

possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case.

The law has provided other mechanisms to guard against possible as distinguished from actual prejudice resulting from the passage of time between crime and arrest or charge. As we said in *United States* v. *Ewell, supra,* at 122, "the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they "are made for the repose of society and the protection of those who may [during the limitation] . . . have lost their means of defence." *Public Schools* v. *Walker,* 9 Wall. 282, 288 (1870). These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced.[14] As this

_____

1952). Quoted in Note, Justice Overdue—Speedy Trial for the Potential Defendant, 5 Stan. L. Rev. 95, 101–102, n. 34.]" Commentary to Rule 2.2 (a), Speedy Trial, n. 10, *supra,* at 23.

[14] The Court has indicated that criminal statutes of limitation are to be liberally interpreted in favor of repose. *United States* v. *Habig,* 390 U. S. 222, 227 (1968). The policies behind civil statutes of limitation are in many ways similar. They "represent a public policy about the privilege to litigate," *Chase Securities Corp.* v. *Donaldson,* 325 U. S. 304, 314 (1945), and their underlying rationale is "to encourage promptness in the bringing of actions, that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents or failure of memory." *Missouri, Kansas & Texas R. Co.* v. *Harriman,* 227 U. S. 657, 672 (1913). Such statutes "are founded upon the general experience of mankind that claims, which are valid, are not usually allowed to remain neglected," *Riddlesbarger* v. *Hartford Insurance Co.,* 7 Wall. 386, 390 (1869), they "promote justice by preventing

Court observed in *Toussie* v. *United States,* 397 U. S. 112, 114–115 (1970):

"The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity."

There is thus no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function.

Since appellees rely only on potential prejudice and the passage of time between the alleged crime and the

---

surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," *Order of Railroad Telegraphers* v. *Railway Express Agency,* 321 U. S. 342, 348–349 (1944), and they "are primarily designed to assure fairness to defendants. . . . [C]ourts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights." *Burnett* v. *New York Central R. Co.,* 380 U. S. 424, 428 (1965). As in the criminal law area, such statutes represent a legislative judgment about the balance of equities in a situation involving the tardy assertion of otherwise valid rights: "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of Railroad Telegraphers* v. *Railway Express Agency, supra,* at 349.

indictment, see Part IV, *infra,* we perhaps need go no further to dispose of this case, for the indictment was the first official act designating appellees as accused individuals and that event occurred within the statute of limitations.[15] Nevertheless, since a criminal trial is the likely consequence of our judgment and since appellees may claim actual prejudice to their defense, it is appropriate to note here that the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment. Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.[16] Cf. *Brady* v. *Maryland,* 373 U. S. 83 (1963); *Napue* v. *Illinois,* 360 U. S. 264 (1959). However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution.[17] Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal

[15] "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U. S. C. § 3282.

[16] Brief for the United States 26–27.

[17] A number of courts of appeals have considered the question. See, *e. g., Benson* v. *United States,* 402 F. 2d, at 580; *Schlinsky* v. *United States, supra; United States* v. *Capaldo, supra; United States* v. *Lee,* 413 F. 2d, at 913; *United States* v. *Wilson, supra; United States* v. *Harbin,* 377 F. 2d, at 80; *Acree* v. *United States, supra; Nickens* v. *United States, supra,* at 340 n. 2, 323 F. 2d, at 810 n. 2.

prosecution.[18] To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case. It would be unwise at this juncture to attempt to forecast our decision in such cases.

## IV

In the case before us, neither appellee was arrested, charged, or otherwise subjected to formal restraint prior to indictment. It was this event, therefore, that transformed the appellees into "accused" defendants who are subject to the speedy trial protections of the Sixth Amendment.

The 38-month delay between the end of the scheme charged in the indictment and the date the defendants were indicted did not extend beyond the period of the applicable statute of limitations here. Appellees have not, of course, been able to claim undue delay pending trial, since the indictment was brought on April 21, 1970, and dismissed on June 8, 1970. Nor have appellees adequately demonstrated that the pre-indictment delay by the Government violated the Due Process Clause. No actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely

---

[18] Cf. *Hoffa* v. *United States,* 385 U. S. 293, 310 (1966):

"There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.

*Reversed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL join, concurring in the result.

I assume that if the three-year delay in this case had occurred *after* the indictment had been returned, the right to a speedy trial would have been impaired and the indictment would have to be dismissed. I disagree with the Court that the guarantee does not apply if the delay was at the pre-indictment stage of a case.

From March 15, 1965, to February 6, 1967, appellees acting through Allied Enterprises, Inc., sold and installed home intercom, fire control, and burglar detection devices in the District of Columbia metropolitan area. Their business endeavors were soon met with a spate of lawsuits seeking recovery for consumer fraud and, on February 6, 1967, their brief career was ended by a cease-and-desist order entered by the Federal Trade Commission. Public notoriety continued to surround appellees' activities and, in a series of articles appearing in the Washington Post in September and October of 1967, their business was mentioned as being under investigation by the United States Attorney. The special grand jury that was impaneled on October 9, 1967, to investigate consumer fraud did not, however, return an indictment against

appellees. Sometime between the summer of 1968 and January 1969, appellees delivered their business records to the United States Attorney, but an indictment was not returned against them until April 21, 1970. The indictment charged some 19 counts of mail fraud, wire fraud, and transportation of falsely made securities in interstate commerce all between September 3, 1965, and January 19, 1966.

Appellees moved "to dismiss the indictment for failure to commence prosecution . . . within such time as to [satisfy the] . . . rights to due process of law and to a speedy trial . . . ." The United States Attorney sought to excuse the delay, alleging that his office had been understaffed at the time and that it had given priority to other types of crimes. The District Court granted appellees' motion [1] and the United States appealed. 18 U. S. C. § 3731 (1964 ed., Supp. V).

The majority says "that it is either a formal indictment or information or else the actual restraints imposed by

---

[1] In dismissing the indictment, the District Court said:

"It appears to the Court that the matters complained of occurred between March 1965 and January 1966. It further appears that these matters were known from early 1967 or a matter of common knowledge in late 1967. There appears no reason why a three-year delay from 1967 was justified by the necessity of research and examination delving into the various transactions, they could have been discovered and handled much, much sooner, certainly probably during the year 1967 or at the latest early 1968.

"The defendants have been indicted on 19 counts, each of which I believe carries a ten-year sentence, each of which is a separate, distinct transaction which would justify consecutive sentences, and by the very nature of this outrageous scheme if the allegations could be believed, the ability to remember, to build up in one's recollection, to produce the necessary defense, is bound to have been seriously prejudiced by the delay of at least some three years in bringing the prosecution that should have been brought in 1967, or at the very latest early 1968.

"The Court, therefore, views that there has been a lack of speedy prosecution in this case, and will grant the motion to dismiss."

arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision . . . ." *Ante,* at 320.

The Sixth Amendment, to be sure, states that "the accused shall enjoy the right to a speedy and public trial." But the words "the accused," as I understand them in their Sixth Amendment setting, mean only the person who has standing to complain of prosecutorial delay in seeking an indictment or filing an information. The right to a speedy trial is the right to be brought to trial speedily which would seem to be as relevant to pre-indictment delays as it is to post-indictment delays. Much is made of the history of the Sixth Amendment as indicating that the speedy trial guarantee had no application to pre-prosecution delays.

There are two answers to that proposition. First, British courts historically did consider delay as a condition to issuance of an information.

Lord Mansfield held in *Rex* v. *Robinson,* 1 Black. W. 541, 542, 96 Eng. Rep. 313 (K. B. 1765), that the issuance of an information was subject to time limitations: "If delayed, the delay must be reasonably accounted for." In *Regina* v. *Hext,* 4 Jurist 339 (Q. B. 1840), an information was refused where a whole term of court had passed since the alleged assault took place. Accord: *Rex* v. *Marshall,* 13 East 322, 104 Eng. Rep. 394 (K. B. 1811).

Baron Alderson said in *Regina* v. *Robins,* 1 Cox's C. C. 114 (Somerset Winter Assizes 1844), where there was a two-year delay in making a charge of bestiality:

> "It is monstrous to put a man on his trial after such a lapse of time. How can he account for his conduct so far back? If you accuse a man of a crime the next day, he may be enabled to bring forward his servants and family to say where he was and what he was about at the time; but if the

charge be not preferred for a year or more, how can he clear himself? No man's life would be safe if such a prosecution were permitted. It would be very unjust to put him on his trial."

Second, and more basically, the 18th century criminal prosecution at the common law was in general commenced in a completely different way from that with which we are familiar today. By the common law of England which was brought to the American colonies, the ordinary criminal prosecution was conducted by a private prosecutor, in the name of the King. In case the victim of the crime or someone interested came forward to prosecute, he retained his own counsel and had charge of the case as in the usual civil proceeding. See G. Dession, Criminal Law, Administration and Public Order 356 (1948). Procedurally, the criminal prosecution was commenced by the filing of a lawsuit, and thereafter the filing of an application for criminal prosecution or rule *nisi* or similar procedure calling for the defendant to show cause why he should not be imprisoned. The English common law, with which the Framers were familiar, conceived of a criminal prosecution as being commenced prior to indictment. Thus in that setting the individual charged as the defendant in a criminal proceeding could and would be an "accused" prior to formal indictment.[2]

---

[2] See 1 J. Stephen, History of the Criminal Law of England 493–496 (1883):

"In England, and, so far as I know, in England and some English colonies alone, the prosecution of offences is left entirely to private persons, or to public officers who act in their capacity of private persons and who have hardly any legal powers beyond those which belong to private persons." *Id.*, at 493.

For an annotated version of the inception and evolution of the British system, see M. Schwartz, Cases and Materials on Professional Responsibility and the Administration of Criminal Justice 2–3 (Nat. Council on Legal Clinics 1961).

The right to a speedy trial, which we have characterized "as fundamental as any of the rights secured by the Sixth Amendment," *Klopfer* v. *North Carolina,* 386 U. S. 213, 223, protects several demands of criminal justice: the prevention of undue delay and oppressive incarceration prior to trial; the reduction of anxiety and concern accompanying public accusation; and limiting the possibilities that long delay will impair the ability of an accused to defend himself. *Smith* v. *Hooey,* 393 U. S. 374, 377–378 (1969). See also *People* v. *Prosser,* 309 N. Y. 353, 356, 130 N. E. 2d 891, 894 (1955). The right also serves broader interests:

> "The Speedy Trial Clause protects societal interests, as well as those of the accused. The public is concerned with the effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. Just as delay may impair the ability of the accused to defend himself, so it may reduce the capacity of the government to prove its case. See *Ponzi* v. *Fessenden,* 258 U. S. 254, 264 (1922). Moreover, while awaiting trial, an accused who is at large may become a fugitive from justice or commit other criminal acts. And the greater the lapse of time between commission of an offense and the conviction of the offender, the less the deterrent value of his conviction." *Dickey* v. *Florida,* 398 U. S. 30, 42 (1970) (BRENNAN, J., concurring).

At least some of these values served by the right to a speedy trial are not unique to any particular stage of the criminal proceeding. See Note, 43 N. Y. U. L. Rev. 722, 725–726 (1968); Note, 77 Yale L. J. 767, 780–783 (1968); Comment, 11 Ariz. L. Rev. 770, 774–776 (1969). Undue delay may be as offensive to the right to a speedy trial before as after an indictment or information. The anx-

iety and concern attendant on public accusation may weigh more heavily upon an individual who has not yet been formally indicted or arrested for, to him, exoneration by a jury of his peers may be only a vague possibility lurking in the distant future. Indeed, the protection underlying the right to a speedy trial may be denied when a citizen is damned by clandestine innuendo and never given the chance promptly to defend himself in a court of law. Those who are accused of crime but never tried may lose their jobs or their positions of responsibility, or become outcasts in their communities.

The impairment of the ability to defend oneself may become acute because of delays in the pre-indictment stage. Those delays may result in the loss of alibi witnesses, the destruction of material evidence, and the blurring of memories. At least when a person has been accused of a specific crime, he can devote his powers of recall to the events surrounding the alleged occurrences. When there is no formal accusation, however, the State may proceed methodically to build its case while the prospective defendant proceeds to lose his.[3]

The duty which the Sixth Amendment places on Government officials to proceed expeditiously with crim-

---

[3] Judge Wright recognized this in his concurring opinion in *Nickens* v. *United States,* 116 U. S. App. D. C. 338, 343, 323 F. 2d 808, 813 (1963):

"Indeed, a suspect may be at a special disadvantage when complaint or indictment, or arrest, is purposefully delayed. With no knowledge that criminal charges are to be brought against him, an innocent man has no reason to fix in his memory the happenings on the day of the alleged crime. Memory grows dim with the passage of time. Witnesses disappear. With each day, the accused becomes less able to make out his defense. If, during the delay, the Government's case is already in its hands, the balance of advantage shifts more in favor of the Government the more the Government lags. Under our constitutional system such a tactic is not available to police and prosecutors."

inal prosecutions would have little meaning if those officials could determine when that duty was to commence. To be sure, "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." *Beavers* v. *Haubert,* 198 U. S. 77, 87 (1905). But it is precisely because this right is relative that we should draw the line so as not to condone illegitimate delays whether at the *pre-* or the *post-*indictment stage.[4]

Our decisions do not support the limitations of the right to a speedy trial adopted in the majority's conclusion that "the [Sixth] amendment [does not extend] to

---

[4] "[A] preprosecution delay can result in the loss of physical evidence, the unavailability of potential witnesses, and the impairment of the ability of the prospective defendant and his witnesses to remember the events in question. Indeed, the possibility of such prejudice may be greater in preprosecution-delay cases than in post indictment-delay cases. The typical prospective defendant is probably unaware of the fact that criminal charges will eventually be brought against him. Thus, he will have no reason to take measures to preserve his memory or the memories of his witnesses. The importance of these considerations becomes clear when measured against the state's ability to collect and document evidence as it carries out its criminal investigation, thereby preserving its probative firepower until the time of eventual arrest.'

"The causal factor also can be present in a preprosecution delay. Many preprosecution delays are caused by the reluctance of the government to terminate an undercover investigation. If the knowledge obtained by an undercover agent is used as the basis for an arrest or for the issuance of a complaint, the identity of the agent may be exposed and his effectiveness destroyed. Consequently, the government will often delay arresting an individual against whom its case is complete if the agent is still obtaining evidence against other individuals. In such a situation, the government has made a deliberate choice for a supposed advantage. While this advantage is arguably not sought vis-à-vis the defendant asserting the speedy-trial claim, the fact remains that the advantage arises out of a deliberate and avoidable choice on the part of law-enforcement authorities." Note, 20 Stan. L. Rev. 476, 489.

the period prior to arrest." *Ante,* at 321. In *Miranda* v. *Arizona,* 384 U. S. 436, 444 (1966), we held that it was necessary for the police to advise of the right to counsel in the pre-indictment situation where "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." That case, like the present one, dealt with one of the rights enumerated in the Sixth Amendment. to which an "accused" was entitled. We were not then concerned with whether an "arrest" or an "indictment" was necessary for a person to be an "accused" and thus entitled to Sixth Amendment protections. We looked instead to the nature of the event and its effect on the rights involved. We applied the *Miranda* rule even though there was no "arrest," but only an examination of the suspect while he was in his bed at his boarding house, the presence of the officers making him "in custody." *Orozco* v. *Texas,* 394 U. S. 324, 327. We should follow the same approach here and hold that the right to a speedy trial is denied if there were years of unexplained and inexcusable pre-indictment delay.

*Dickey* v. *Florida, supra,* similarly demonstrates the wisdom of avoiding today's mechanical approach to the application of basic constitutional guarantees. While he was in custody on an unrelated federal charge, the petitioner was identified by a witness to the robbery. Petitioner remained in federal custody, but the State did not seek to prosecute him until September 1, 1967, when he moved to dismiss the detainer warrant which had been lodged against him. An information was then filed on December 15, 1967, and petitioner was tried on February 13, 1968. Although the trial took place less than two months after the filing of the information, we held that there had been a denial of the right to a speedy trial because of the delay of more than seven years between the crime and the information.

In a concurring opinion, Mr. Justice Brennan discussed the broader questions raised by that case:

"When is governmental delay reasonable? Clearly, a deliberate attempt by the government to use delay to harm the accused, or governmental delay that is 'purposeful or oppressive,' is unjustifiable. . . . The same may be true of any governmental delay that is unnecessary, whether intentional or negligent in origin. A negligent failure by the government to ensure speedy trial is virtually as damaging to the interests protected by the right as an intentional failure; when negligence is the cause, the only interest necessarily unaffected is our common concern to prevent deliberate misuse of the criminal process by public officials. Thus the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoided— whether it was unnecessary. To determine the necessity for governmental delay, it would seem important to consider, on the one hand, the intrinsic importance of the reason for the delay, and, on the other, the length of the delay and its potential for prejudice to interests protected by the speedy-trial safeguard. For a trivial objective, almost any delay could be reasonably avoided. Similarly, lengthy delay, even in the interest of realizing an important objective, would be suspect." 398 U. S., at 51–52.

In the present case, two to three years elapsed between the time the District Court found that the charges could and should have been brought and the actual return of the indictment. The justifications offered were that the United States Attorney's office was "not sufficiently staffed to proceed as expeditiously" as desirable [5] and

---

[5] The District Judge pointed out that the then Assistant Attorney General had indicated "that he didn't need any more help" and that the United States Attorney retreated from this factual assertion.

that priority had been given to other cases. Appellees say that the present indictment embraces counts such as an allegedly fraudulent telephone conversation made on December 16, 1965. They argue that there is a great likelihood that the recollection of such events will be blurred or erased by the frailties of the human memory. If this were a simpler crime, I think the British precedent which I have cited would warrant dismissal of the indictment because of the speedy trial guarantee of the Sixth Amendment. But we know from experience that the nature of the crime charged here often has vast interstate aspects, the victims are often widely scattered and hard to locate, and the reconstruction of the total scheme of the fraudulent plan takes time. If we applied the simpler rule that was applied in simpler days, we would be giving extraordinary advantages to organized crime as well as others who use a farflung complicated network to perform their illegal activities. I think a three-year delay even in that kind of case goes to the edge of a permissible delay. But on the bare bones of this record I hesitate to say that the guarantee of a speedy trial has been violated. Unless appellees on remand demonstrate actual prejudice, I would agree that the prosecution might go forward. Hence I concur in the result.