Burton B. Roberts, J.
On June 18, 1975, the defendant was arrested and arraigned on the instant indictment, which had been filed on April 24, 1975, and which charges him with the crime of bribery in the second degree allegedly committed *747 some 18 months prior thereto, on October 15, 1973. He now moves to dismiss the indictment on the grounds that deliberate preprosecution delay has violated his due process right to a fair trial, and requests at the very least a hearing to determine purported issues of fact raised by his motion papers.
The motion is denied in all respects.
The two factual contentions upon which the motion is based are contained in an affidavit by the defendant’s attorney, sworn to "on information and belief’. The first contention is that the defendant’s arrest was deliberately delayed by law enforcement officials so that his arraignment would be contemporaneous with the arraignments of numerous other individuals charged with similar but unrelated crimes,, for reasons of "public relations and press releases”. The second contention is that, as a result of such purposeful delay, the defendant’s ability to defend against the charges has been impaired in that he is now unable to recall the events in question.
The People allege that in mid-October of 1973 the defendant had several meetings with a New York City construction inspector named Anthony Vecchia in which they discussed payoffs to overlook violations of the Building Code at the Hotel Bretton Hall, 2350 Broadway, of which the defendant was part-owner. It is alleged further that "Vecchia” was really Detective Anthony Zecca, who had assumed the role of an inspector as part of a major effort to uncover corruption in the New York City construction industry, and that his conversations with the defendant were secretly tape recorded. While the defendant does not formally concede the above facts, it is beyond any serious dispute that theo defendant did in fact have an interest in the Bretton Hall, that the District Attorney is in possession of and intends to introduce at trial several tape recordings of conversations concerning the hotel between Zecca and an individual identifying himself as "Milton 'Z’”, and that the same Grand Jury that indicted the defendant also charged approximately 100 other individuals — city inspectors, construction executives and building owners — with similar crimes after hearing testimony that resulted from two years of undercover work by Zecca and by other individuals who had been "caught” by Zecca and who had agreed in turn to co-operate with the authorities in furtherance of the investigation.
The proposition that delay in making an arrest can be a *748 denial of due process is, to a large extent, the creature of a series of cases involving undercover narcotics sales in the District of Columbia Circuit. (See Woody v United States, 370 F2d 214, 216-217 and cases cited therein.) Indeed, those are the cases upon which defendant bases the instant motion. What the Circuit Court found objectionable there, however, was not the delay itself or the general effect of such delay upon the fact-finding process but rather the substantial risk of mistaken identification which resulted from the delayed arrest in cases where the sole witness to the brief transaction constituting the offense was a prolific undercover officer with little or no independent recollection of either the defendant or the event. The court held that in such cases the rationale offered for the delayed arrest procedure, to wit, the continued effectiveness of an undercover officer, was insubstantial compared with the prejudice to the defendant’s rights. (Woody v United States, supra; United States v Napue, 401 F2d 107 [7th Cir].) This is also, at least by implication, the view taken in the brief memorandum by the Appellate Division, Second Department, in People v Townsend (38 AD2d 569), a case involving a narcotics sale in which the court apparently bases its order directing a hearing on the District of Columbia cases. (See People v Mintz, 38 AD2d 943.)
Surely, any similarity between the District of Columbia narcotics delay series and the instant case exists only on the most superficial level: both involve undercover officers. Beneath that happenstance lies several substantial and crucial differences: The District of Columbia cases involved unreliable identification methods, nondescript transactions and fungible undercover detectives, while the case at bar involves no real identification issue, tape recorded conversations of unique dealings and a long-range investigation into a deeply rooted pattern of corruption. In other words, there is no possible equation here to the narcotics delay cases in terms of either the prejudice to the defendant or the reasons for the delay. '
United States v Marion (404 US 307), also cited by the defendant, is even less availing to him. Marion holds that a showing of actual prejudice is necessary in order for preindictment delay to achieve the dimensions of a constitutional violation or else a showing that the prosecution intentionally delayed to gain some unfair tactical advantage over the defendant or to harass him. Without such a showing, held the court, the inherent effects of delay, such as the dimming of *749 memories, are within the purview of the applicable Statute of Limitations and do not make out a due process claim (pp 325-326).
There is no claim of actual prejudice in this case, but merely a lawyer’s facile statement of his client’s fading recollection. This is an insufficient basis, in both form and substance, upon, which to predicate a hearing. (People v Smithline, 79 Misc 2d 635.) Nor is there any actual claim of delay to gain an unfair tactical advantage. Defendant offers only some vague and speculative "public relations” motive. Of course, the other side of the pejorative "public relations” may well be reasons of efficiency, economy, secrecy and even the legitimate function of a District Attorney in educating the public. It is unnecessary, however, to become involved in such issues, for defendant’s unsupported allegations are an insufficient basis for a hearing. The only conclusion drawable from the record before me is that the delay in arresting this defendant was in the legitimate best interests of an important investigation.