UNITED STATES of America

v.

Vincent CIRAULO, a/k/a "Jimmy East," and Thomas Ragusa, Defendants.

No. 78 Cr. 434.

United States District Court, S. D. New York.

Feb. 26, 1980.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for the U. S.; Peter D. Sudler, Carl T. Solberg, Asst. U. S. Attys., New York City, of counsel.

Joel Winograd, New York City, for defendant Vincent Ciraulo.

Thomas J. O'Brien, New York City, for defendant Thomas Ragusa.

## OPINION

EDWARD WEINFELD, District Judge.

The indictment charges the defendants, Vincent Ciraulo and Thomas Ragusa and others named as co-conspirators, with conspiracy to engage in a pattern of racketeering activity, the collection of unlawful debt and collection of extensions of credit by extortionate means. Ciraulo and Ragusa are also charged with substantive offenses of a pattern of racketeering activity and collection of unlawful debt, and extortionate collection of extensions of credit, and obstruction of justice with respect to a Grand Jury inquiry into the other alleged crimes. Ciraulo is charged separately in four counts with income tax offenses based upon income allegedly received as a result of the illegal activities charged in the extortionate credit transaction counts.[1]

The alleged criminal conduct extended over a period beginning in 1973 and terminating in 1976. The overt acts in the conspiracy count set forth threats, violence and physical beatings administered by the defendants to enforce payments of usurious loans, in many instances, alleged to have been made at the rate of 5% per week. The nature of the charges indicates that an extensive investigation was required to unearth the evidence necessary for presentation to the Grand Jury and for a successful prosecution.

The scope of the investigation included the use of electronic surveillance pursuant to Court orders. Following the electronic surveillance, 30 witnesses were called before the Grand Jury. The last government witness who testified with respect to defendants' alleged extortion, racketeering activities, and obstruction of justice appeared before the Grand Jury on December 30, 1976. The indictment, however, was not filed until June 7, 1978. In explanation of this delay, the government contends that during the investigation and prior to the return of the indictment Ciraulo had learned that he was under investigation and had fled the jurisdiction; that intensive efforts to locate him at his residence and usual haunts were unavailing. In this circumstance, the government was of the view that the arrest of Ragusa, whose whereabouts were known would alert Ciraulo and result in his becoming even more inaccessible and perhaps fleeing the country. Accordingly, for these reasons and others advanced in sealed affidavits, the indictment was sealed and remained so until January 21, 1980. On the day following its unsealing both defendants were arrested. The defendant Ragusa now moves to dismiss the indictment upon various grounds in which application Ciraulo joins.

### 1. Pre-Indictment Delay

The period between the last overt act alleged, November 16, 1976 and the return of the indictment on June 7, 1978, is almost nineteen months, but well within the shortest statute of limitations period of any of the offenses set forth in the indictment.[2] The government, in further explanation of the delay, states that when the defendants' alleged loan sharking activities came to light they triggered an additional investigation with respect to the income allegedly derived therefrom. This investigation was conducted by agents of the Internal Revenue Service, was time-consuming, and was hampered by the absence of Ciraulo, who

---

1. Ragusa was not charged with income tax offenses because venue in his case is in the Eastern District of New York where he resides and where it is stated such a prosecution is contemplated.

2. Conspiracy, obstruction of justice and extortion counts each have a five-year limitation period (18 U.S.C. § 3282). A six-year limitation period governs the tax counts (26 U.S.C. § 6531) and a ten-year limitation applies to the racketeering charge (18 U.S.C. § 1961(5)).

was unavailable for interview and preliminary investigation by that agency. As to pre-indictment delay, it is well settled that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused' "[3]—an event that does not occur until the filing of the indictment. The defendants' principal protection against pre-indictment delay is the statute of limitations under which, as already noted, the shortest period will not expire until November 1981, almost twenty-two months after the defendants' arrest. Accordingly, there is no basis for the requested relief.

However, in *Marion* the Supreme Court noted that the due process clause of the Fifth Amendment may be brought into play to afford a defendant relief upon a showing that the pre-indictment delay "caused substantial prejudice to [a defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused."[4] But there has been no such showing in this case. First, the delay was the result of the nature of the various charges which necessarily required substantial investigation and also was due to an additional investigation of alleged income tax violations arising out of the initial inquiry. Indeed, the Supreme Court has held that a good faith investigative delay, even if it resulted in some prejudice, does not constitute a due process violation.[5] Second, the defendant Ciraulo's absence from the jurisdiction, whether he absconded, as the government contends, or as he now asserts was available but not found,[6] justified the government's continued efforts to locate him before arresting Ragusa since, in the light of his undoubted close relationship to Ciraulo, there was a strong probability that Ragusa's arrest would have alerted Ciraulo wherever he was and made him even more inaccessible.

Finally, defendants have made no showing of prejudice. The conclusory statement by Ragusa's attorney "[u]pon information and belief the delay was purposeful and unreasonable" and that "the passage of time has weakened the memory of potential witnesses and eliminated evidence which would otherwise have been available to him" is without the slightest evidential support. In the absence of such proof and considering the government's good faith efforts to locate the missing defendant and the return of the indictment twenty months before the earliest applicable statute of limitations, the Court concludes that defendants' motion to dismiss the indictment based upon alleged prejudicial pre-indictment delay must be denied.

### 2. *Post-Indictment Delay*

Similarly, defendants' motion for dismissal of the indictment on the ground of the nineteen-month delay between its filing on June 7, 1978 and its unsealing in January 1980 followed by defendants' arrest the next day must be denied. Ciraulo's claim borders on the frivolous since he was a fugitive until his arrest. As to the defendant Ragusa, again reliance is placed upon his attorney's "information and belief" affidavit referred to above. But chapter and verse as to any potential witness whose memory may have been dimmed by the passage of time or whom may now be unavailable has not been submitted; who these alleged witnesses may be is not stated; nor is the general nature of their purported testimony set forth. Upon the argument of this motion defense counsel did allude to a witness who had committed sui-

---

**3.** *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971).

**4.** *Id.* at 324, 92 S.Ct. at 465 (citation omitted).

**5.** *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *see United States v. Mejias*, 552 F.2d 435 (2d Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977).

**6.** The Court indicated that if an appropriate affidavit was filed by Ciraulo with respect to this contention it would conduct a fact hearing on the issue. The defendant failed to file either an affidavit or request such a hearing and, accordingly, there is no basis for not accepting the government's contention.

cide, but it developed that the deceased was a potential government witness and the prejudice, if any by reason of the death of the witness, was against the government's interest and not that of the defense.

■ The government, in its affidavit in opposition to this branch of the motion, has convincingly established that the post-indictment delay in large measure was due to the efforts to locate the missing co-defendant Ciraulo and its belief that to have arrested the available Ragusa would have alerted Ciraulo, made his apprehension more difficult and might well have led him to flee the country. In the circumstances here presented, "it was realistic for the Government to believe that an arrest of one defendant would lead to the flight of one or more of the others"[7] and there is no basis to support Ragusa's claim of violation of his right to due process of law. Moreover, even if Ragusa had established substantial actual prejudice (which he has not), the government has met its burden of showing strong prosecutorial interest.[8]

### 3. *Motion for Severance*

■ Ragusa also moves for a severance based upon the inclusion in the indictment of the tax counts against Ciraulo. It is clear that with respect to the first seven counts in which both defendants are named a joint trial is proper since these involve "the same act or transaction or . . . the same series of acts or transactions. . . ."[9] The crimes are provable by the same evidence; it would serve judicial economy, without causing substantial prejudice,

to try them together. Indeed, not to try them together would be a gross waste of judicial effort and time.[10]

■ Ragusa alternatively moves under Rule 14 for a severance of the income tax counts against Ciraulo on the ground that he would be prejudiced by a spill-over effect if these where to be tried together with the other counts in which he is jointly named with Ciraulo. The claim of prejudice is without substance. The evidence upon which the government necessarily will rely to establish the tax counts is the very evidence that will be introduced in presenting its case against both defendants that by loan shark interest rates and extortionate methods they derived income. The income tax charges directly flow from the substantive loan sharking and extortion charges made against both defendants. And it is only because Ragusa is a resident of the Eastern District that he is not charged with income tax violations in the instant indictment. With a plethora of evidence to be offered against both defendants in support of the conspiracy, racketeering, extortion and loan sharking activities which would necessarily include proof of monies received by both defendants, there is no basis for any prejudicial spill-over effect. Ragusa has failed to support his claim of substantial prejudice by a joint trial.[11]

### 4. *Motion to Suppress*

■ The defendants' motion to suppress the fruits of electronic surveillance upon the ground of lack of probable cause is denied. A fair reading of the affidavits

---

7. *United States v. Watson*, 599 F.2d 1149, 1153 (2d Cir. 1979).

8. *Cf. United States v. Lovasco*, 431 U.S. 783, 793, 97 S.Ct. 2044, 2050, 52 L.Ed.2d 752 (1977).

9. Fed.R.Crim.Proc. 8(b). The Rule provides: JOINDER OF DEFENDANTS. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of

the defendants need not be charged in each count.

10. *See United States v. Corr*, 543 F.2d 1042, 1052 (2d Cir. 1976) (citing cases); *United States v. Kahaner*, 203 F.Supp. 78, 80–81 (S.D. N.Y.1962), *aff'd*, 317 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 836, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963).

11. *See United States v. Papadakis*, 510 F.2d 287, 299–300 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *United States v. DeSapio*, 435 F.2d 272, 280 (2d Cir. 1970), *cert. denied*, 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971).

reflects substantial probable cause for the issuance of the orders in question.