**UNITED STATES of America**
v.
**Angelo V. GRACI.**

**UNITED STATES of America**
v.
**James N. MARKWELL and Angelo V. Graci.**
**Crim. Nos. 15089, 15091.**

United States District Court,
M. D. Pennsylvania.
Feb. 22, 1973.

S. John Cottone, U. S. Atty., Scranton, Pa., for plaintiff.

Gilbert E. Petrina, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, District Judge.

Defendants, James N. Markwell and Angelo V. Graci, have filed similar motions to dismiss the indictments and charge the Government with failure to prosecute timely in violation of their rights under the Fifth and Sixth Amendments of the United States Constitution. In Criminal No. 15089, defendant Graci is charged with delivering and disposing of a depressant or stimulant drug on November 13, 1969, in violation of Title 21 U.S.C. §§ 360a(b) and 331(q)(2). In Criminal No. 15091, both defendants are charged in a three-count indictment with (1) on or about April 26, 1967, selling, conveying and disposing of stolen property of the United States, to wit, depressant or stimulant drugs of a value in excess of $100 in violation of Title 18 U.S.C. §§ 641 and 2; (2) on or about October 13, 1967, selling, conveying and disposing of stolen property of the United States, to wit, depressant or stimulant drugs of a value in excess of $100 in violation of Title 18 U.S.C. §§ 641 and 2; and (3) during the period from April 26, 1967, to December 31, 1968, conspiring to sell, convey and dispose of stolen property of the United States, to wit, depressant or stimulant drugs of a value in excess of $100 in violation of Title 18 U.S.C. § 371. Hearings on the defense motions were held on October 27, 1972, and December 4 and 5, 1972, and the parties were allowed twenty days to submit briefs.

The evidence adduced at these hearings established the following facts:

On August 26, 1969, the Defense Supply Agency (DSA) was notified that a quantity of drugs bearing U. S. Government identifying labels (Federal Stock Numbers) was recovered by South Carolina police in a raid on "Little Joe's Truck Stop", Olar, South Carolina. The operators of the truck stop, James Hayes and JoAnn Hayes, his wife, were arrested and Mrs. Hayes informed authorities that the drugs came from the Mechanicsburg, Pennsylvania Army Depot and were purchased from James Markwell. DSA does not have investigative capabilities and, therefore, arranged for an investigation to be conducted by the Bureau of Narcotics and Dangerous Drugs (BNDD). The Department of the Army also assigned a Criminal Investigator, Warrant Officer Jack W. Bare, to the case. Although Mrs. Hayes refused to sign a statement implicating Markwell, she agreed to cooperate with the BNDD and, in October, 1969, she made arrangements to make a "buy" of drugs from Markwell and Graci. On November 13, 1969, while acting in concert with undercover agents, Mrs. Hayes acquired a "sample" of drugs from Graci at the Holiday East Motel, Harrisburg, Pennsylvania. Other attempts to make a buy from Markwell and Graci throughout November and December, 1969, and January, 1970, were unsuccessful. On January 21, 1970, BNDD agents attempted to obtain authorization for an arrest warrant for Graci but U. S. Attorney S. John Cottone was of the opinion that sufficient corroborative evidence was lacking and refused to authorize prosecution whereupon BNDD discontinued its investigation. Notwithstanding this refusal, Lt. Colonel Charles Batchelor of the Defense Supply Agency, felt that the investigation should continue and requested the Federal Bureau of Investigation to assist and, on January 30, 1970, Special Agent George Keenan was as-

signed to this case. Special Agent Keenan reviewed the BNDD reports and conducted his own investigation and on July 28, 1970, sought authorization for prosecution from U. S. Attorney Cottone, who agreed to review the matter further. On September 28, 1970, Mr. Cottone again refused to authorize prosecution due to insufficient proof and, in an effort to buttress the case, Special Agent Keenan interviewed Markwell, who denied any wrongdoing, (Graci apparently refused to be interviewed) and the FBI closed the file on October 16, 1970. In the meantime, Mr. Bare remained on the case and in December, 1970, interviewed Michael J. Pogner, an employee at the Depot, relative to the involvement of Graci and Markwell in drug thefts and stated, "we've got these birds cold". Pogner told Graci of the interview and Graci, in turn, reported this to his superior, Capt. Jack Honsinger, who contacted one Colonel Herman of DSA and was told that the investigation of Graci was "a dead issue" and that Bare would be told to discontinue making such statements. Honsinger relayed this information to Graci who, upon hearing it, "was greatly relieved". Graci had retained an attorney to represent him but now dismissed him.

In January, 1971, the DSA had a change in command, and one Colonel Johnson was appointed Provost Marshall. Colonel Johnson reviewed the file of this case, decided that it should be pursued further, and enlisted the aid of Mr. Robert Murdock, Attorney advisor to DSA in Washington. Murdock reviewed the case with Col. Johnson on April 6, 1971, and met with Mr. Bare on April 15, 1971, instructing Bare to prepare a complete report on the investigation including evidence which would be admissible in court. Bare submitted his report on June 7, 1971, and Murdock concluded that there was not enough evidence to warrant prosecution. Murdock, however, decided to pursue the investigation further and Bare was sent to South Carolina where, for the first time, Mrs. Hayes on August 5, 1971, signed a statement implicating Graci and Markwell. In addition, Mrs. Hayes mentioned that one of the payments to Markwell was by check, on which there was an imprint of a truck. While in South Carolina, Bare acquired the drugs seized in the raid on "Little Joe's Truck Stop" and prepared a physical inventory. This inventory was then compared to a "shopping list" which Mrs. Hayes had received from Graci in November, 1969. On September 13, 1971, after contacting all banks in the Harrisburg area and reviewing 40 boxes of microfilm, each box containing 40 to 50 reels with 500 checks on each reel, Bare found the check dated October 16, 1967. On December 30, 1971, the additional evidence was presented to the U. S. Attorney and on January 14, 1972, prosecution was authorized. Defendants were arrested January 31, 1972 and indicted February 1, 1972.

Numerous defense motions were filed on March 9, 1972, viz: Motions to dismiss for failure to provide a preliminary hearing, for a bill of particulars, for inspection and discovery, to suppress evidence, and to sever. On April 12, 1972, counsel for both parties filed a stipulation of consolidation of indictments for pretrial purposes and Government's answers to all motions were submitted on April 20, 1972. In the answers, the Government offered to supply defense counsel with much of the material requested but through a mix-up this was never done although defense counsel made timely request. On October 12, 1972, the Court fixed a hearing on the motions for October 25th at which time all motions were disposed of except the present motion to dismiss for failure to prosecute timely *which was filed on October 24th, the day before the scheduled hearing.* Evidence on this motion was received at a hearing on October 27th and at later hearings on December 4th and 5th. Both sides were directed to submit requests for findings of fact and conclusions of law and this was done on February 5, 1973.

In response to the defendants' charge of failure to prosecute timely, the Government asserts that it was unwilling to proceed against defendants on the uncorroborated testimony of Mrs. Hayes, but that her written statement of August 5, 1971, the finding of the check on September 3, 1971, and the physical inventory of confiscated drugs (which allegedly revealed that there were reported losses at Mechanicsburg for each of the type drugs located in South Carolina), provided the necessary corroboration to warrant prosecution. Defendants challenge the importance of the written statement, contend that Markwell told Bare about the check in February, 1971, and question the relevancy and reliability of the proferred inventory evidence. Furthermore, defendants allege prejudice as a result of the delay in the following. particulars:

(a) One Shirley Parker committed suicide on September 9, 1970, and would have been called as a defense witness to establish that she accompanied Mr. Hayes on one trip to Pennsylvania (presumably to meet with Markwell or Graci) and that no buys were made or drugs exchanged. In response, the Government agreed to stipulate to this testimony, if found relevant;

(b) One Mr. Leone, Mr. Markwell's landlord, died April 5, 1972, and would testify that he never saw Markwell carry DSA-marked boxes into his home. Similarly, the Government agreed to stipulate to this testimony, if relevant;

(c) Three employees of Bell Motel who are now deceased could have corroborated Mr. Hayes' testimony that he never obtained a receipt the time he stayed at the Bell Motel (the Bell Motel receipt was turned over to the Government by Mrs. Hayes);

(d) Mr. Markwell was hospitalized for diabetes on four occasions since March, 1968, and, because of the passage of time, cannot reconstruct pertinent past events;

(e) Because of the passage of time, Graci cannot recall the words used by the undercover agent on November 13, 1969, and his defense of entrapment is impaired;

(f) Graci was misled and his compilation of evidence impaired when Captain Honsinger told him that the investigation had been terminated; and

(g) The inherent dimming of memories and loss of evidence resulting from such a delay.

■ While a great deal of testimony and exhibits were presented at the hearing on defendants' motions, it must not obscure the true issues presently before the Court. Much of the evidence goes to the question of guilt or innocence and not to the issues of pre-indictment and post-indictment delay. With reference to defendants' pre-indictment Sixth Amendment contentions, United States v. Marion, 404 U.S. 307, 321, 323, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971), holds that the reach of this amendment does not extend to the period prior to arrest and that the applicable statutes of limitations perform the function of guarding against the mere possibility that pre-accusation delays will prejudice the defense. No further elaboration on that point is required here.

■ In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) the Supreme Court addressed the post-indictment Sixth Amendment right to a speedy trial and established an ad hoc balancing test consisting of four factors: length of delay, the reason for delay, the defendant's asserting of his right, and the prejudice to defendant. The post-indictment delay here is modest when the record of motions, conferences, arguments and hearings is analyzed. It should be noted that the defendants never requested an early trial and did not raise the failure to prosecute timely until October 24, 1972. Moreover, there has been no showing of prejudice here. The anxiety and concern of the accused is to be expected but much of it has been

caused by the delay necessary to hear and dispose of defense motions. The claim that the defense has been impaired has not been shored up with adequate proof. The proposed testimony of the deceased witnesses is marginal at best and, in most instances, the Government agreed to stipulate to such testimony, if relevant. The defense evidence does not disclose the inability of any key witness to recall accurately events of the distant past and the arguments in this regard are vague and speculative. The remaining examples of prejudice advanced by the defense are unpersuasive.[1] Consequently, I conclude that the post-indictment delay has been insignificant; the primary cause of delay has been due to the filing and disposing of defense motions; the defendants did not request a speedy trial until October 24, 1972, and no actual prejudice has been shown.

Defendants' Fifth Amendment contentions warrant further consideration. Mr. Justice White, speaking for the Court in United States v. Marion, *supra*, noted that the statute of limitations does not fully define a defendant's rights with respect to the events occurring prior to indictment and that a dismissal would be appropriate if it were shown that pre-indictment delay caused substantial prejudice to a defendant's right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. In the present case, there has been absolutely no showing of any intentional conduct on the part of the Government to gain any tactical advantage over defendants. The factual background of this case indicates that diligent, albeit unsuccessful, efforts were made in the early stages of the investigation to obtain hard evidence implicating defendants. The desire for more corroboration of the November 13, 1969 Graci buy is understandable especially in light of Mrs. Hayes' unwillingness to reduce her accusations to writ-

ing. The Government may have reasoned that, absent such perpetuation, the witness may be more inclined to alter or retreat from her oral incriminating statements. In any event, as Mr. Justice White observed in United States v. Marion, 404 U.S. at 321, n. 13, 92 S.Ct. at 464, *supra*, "(a)llowing inquiry into when the police could have arrested or when the prosecutor could have charged would raise difficult problems of proof. As one court said, 'the Court would be engaged in lengthy hearings in every case to determine whether or not the prosecuting authorities had proceeded diligently or otherwise.'" The evidence submitted by the Government here demonstrated that the BNDD relied on undercover purchases to establish its case but these did not materialize. The F.B.I. attempted to build a case by investigation and interviews, but this was similarly thwarted. Finally, the DSA embarked on a series of additional interviews and analysis of inventory which led to the written statement of Mrs. Hayes and the unearthing of physical evidence in the form of a check bearing Markwell's endorsement. It was not until this corroboration had been secured that the U.S. Attorney authorized prosecution. Moreover, as declared by the Supreme Court in Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966):

> "Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

I find, therefore, that there is no showing that the Government intentionally delayed the prosecution in order to gain some tactical advantage over defendants or to harass them. I find further that the delay resulted from valid

---

1. The prejudice contemplated in Sixth Amendment speedy trial claims is post-indictment prejudice. See Barker v. Wingo, *supra*. However, I have considered pre-indictment prejudice, e. g., death of a witness, merely to show that there is no actual prejudice at all.

and justifiable investigatory efforts necessitated by the circumstances of the case. Further, as previously outlined, there is no competent proof that defendants have sustained actual prejudice.

Accordingly, after considering all the evidence presented, I conclude that defendants were not deprived of their Fifth Amendment rights.