Gabrielli, J.
(dissenting in part and concurring in part). Today this court holds for the first time that a delay between the commission of a crime and the initiation of any criminal proceedings against a suspect deprives, in some inexplicable manner, that suspect of due process, even though the delay in no way hinders or prejudices the suspect’s ability to defend himself. I cannot agree.
Initially, it should be emphasized that this case involves an alleged "delay” prior to the initiation of any criminal proceedings, and thus does not implicate either the speedy trial guarantees of the Federal Constitution (see United States v Lovasco, 431 US 783) or New York’s statutory speedy trial *256 provisions (CPL 30.20-30.30; Civil Rights Law, §§ 10, 12). Also inapplicable are those cases, cited by the majority as supporting their position, which are concerned with the effect of excessive delay following the initiation of criminal proceedings against a defendant. Thus, in People v Wilson (8 NY2d 391), this court invalidated an attempt to avoid the effect of a speedy trial dismissal via the mechanism of a subsequent indictment for the same crime. In People v Winfrey (20 NY2d 138, 143) we indicated simply that a "four and a half years’ delay in prosecuting prior to [defendant’s] indictment, but after the initiation of criminal proceedings, deprived him of due process of law” (emphasis added). Similarly, in People v Staley (41 NY2d 789), the objectionable two and one-half year delay came between a prior arrest and arraignment, followed by a dismissal without prejudice to the filing of a new indictment, and the subsequent filing of an indictment for the same crime.
The rule to be derived from these cases is clear: once the State has actually initiated criminal proceedings against a defendant with respect to a particular crime, due process proscribes undue delay in pressing those proceedings to completion. The effect of such delay, moreover, may not readily be avoided by simply commencing another criminal proceeding with respect to the same crime. In such cases, the injury suffered by a defendant is plain: he has been officially and publicly branded as the person whom the State believes to be guilty. Once he has been placed in such an unhappy position, the presumption of innocence and the legally imposed mandates of basic fairness require that the State proceed diligently to either prove his guilt or to decisively lift the shadow of suspicion from the suspect’s shoulders.
The present case, however, is quite different. Here, no criminal proceedings with respect to the Byrne rape-murder were initiated prior to his arrest in 1974; there was no earlier arrest warrant, no arrest, no arraignment, no indictment. There was at most a statement by a police officer to the defendant that he believed the defendant to be guilty of the Byrne rape-murder as well as the murder for which defendant had been arrested. Thus the rule which is applicable to a situation involving a delay subsequent to the initiation of criminal proceedings should not be blindly applied to the present case.
While agreeing, as they must, that the delay in this case *257 was actually (albeit technically) preindictment delay, the majority would nonetheless treat it as though it had occurred subsequent to the initiation of criminal proceedings. In justification of this novel approach, the court emphasizes the fact that at least one police officer notified the defendant that he considered him a suspect in the Byrne rape-murder case. Apparently the majority equates this with the initiation of criminal proceedings. I fail to see the connection between an expression of suspicion by a police officer and the District Attorney’s action in determining the appropriate time to seek an indictment.
I interpret today’s decision as implying that as soon as a police officer informs someone that he is a suspect, a prosecutor will be placed in the unfortunate and perhaps impossible position of having to prove that any subsequent "delay” is founded on "good cause”, whatever that rather amorphous term may comprise in this context. I shudder to think of the obvious potential practical effect upon the criminal justice and law enforcement system, especially if this same theory should subsequently be applied not only to the full panoply of due process protections, but also to the equally basic right to counsel.
It is axiomatic that a District Attorney has broad discretion in determining whether, when, and in what manner to prosecute a suspected criminal (see United States v Lovasco, supra; People v Bowman, 88 Misc 2d 50; Pitler, New York Criminal Practice Under the CPL, § 5.27, at p 267; 27 CJS, District and Prosecuting Attorneys, § 14 [1]; see, also, People v Harding, 44 AD2d 800; CPL 190.55, subd 2, par [c]). The inevitable effect of today’s decision is to unnecessarily fetter this broad prosecutorial discretion, something which should not be done absent a clear constitutional mandate. In this case, the decision was made to continue the investigation into the Byrne rape-murder, rather than to immediately prosecute the defendant on the basis of certain bare circumstantial evidence. There is no indication, and indeed, no claim, that this decision was made in bad faith. I see no reason to require the courts to second guess a District Attorney faced with such a decision. That the investigation seemed fruitless,* and that upon subsequent reconsideration the District Attorney decided it was better to *258 proceed on the basis of the available information than to take no steps to obtain a conviction for this brutal crime, is merely another example of the use of prosecutorial discretion and, once again, there is no indication that this decision was made in bad faith. Thus, I see no reason to hold that defendant may have been deprived of due process.
The Supreme Court of the United States has recently had occasion to consider a very similar situation in United States v Lovasco (supra). While the Lovasco decision does not preclude this court from adopting a more stringent, less flexible rule, the impressive reasoning used by the court in that case certainly merits consideration. There, as here, the delay ensued between the commission of the crime and the commencement of criminal proceedings; there, as here, the bulk of the evidence, upon which the decision to initiate criminal proceedings was eventually made, was actually uncovered shortly after the commission of the crime; there, as here, the delay was for investigatory purposes, but the investigation was fruitless and rather desultory. Mr. Justice Marshall, writing for eight members of the court, engaged in a careful and extensive consideration of the myriad factors and considerations involved in preindictment delay situations. He first noted that: "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor’s judgment as to when to seek an indictment. Judges are not free, in defining 'due process,’ to impose on law enforcement officials our 'personal and private notions’ of fairness and to 'disregard the limits that bind judges in their judicial function.’ * * * Our task is more circumscribed. We are to determine only whether the action complained of— here, compelling respondent to stand trial after the Government delayed indictment to investigate further — violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,’ * * * and which define 'the community’s sense of fair play and decency’ ”. (431 US, at p 790.) Applying that standard, the court found that compelling Lovasco to stand trial would not violate the mandate of due process. The same conclusion is certainly appropriate in the present case.
This is not to say, of course, that delay prior to the commencement of criminal proceedings may never constitute a denial of due process. Such a determination, however, would only be appropriate in certain rather egregious cases, as *259 where any unexcused prosecutorial delay substantially prejudices a suspect’s ability to defend himself (see United States v Lovasco, supra, 431 US, at p 790; United States v Marion, 404 US 307, 324-325). The burden of proof in such cases, however, should rest with the defendant, for these claims are easily made and can be disproved only with great difficulty. In the instant case, the defendant has not shown that his ability to defend himself has in any measure been impaired by the delay.
With respect to the contention of defendant as to deprivation of counsel, I am constrained to concur with the majority.
Accordingly, I vote to reverse the order of the Appellate Division and to remit the case for a new trial.
Jones, J. (concurring in part and dissenting in part). I am in full agreement with the determination of the majority, and for the reasons stated, that defendant’s oral statements and written confession obtained on May 9, 1974 should be suppressed. On the other hand, as to the effect of delay in prosecution in this case, I am in accord with the conclusion reached by Judge Gabrielli.
Accordingly, I would reverse the order of the Appellate Division and remit the case for a new trial.
Chief Judge Breitel and Judges Fuchsberg and Cooke concur with Judge Wachtler; Judge Gabrielli dissents in part and concurs in part and votes to reverse and order a new trial in a separate opinion in which Judge Jasen concurs; Judge Jones concurs in part and dissents in part and votes to reverse and order a new trial in another opinion.
Order reversed, judgment vacated, motion to suppress granted, order denying motion to dismiss vacated, and the case remitted to the Supreme Court, Suffolk County, for further proceedings in accordance with the opinion herein.

 It should be noted, however, that when defendant was arrested for the Byrne rape-murder, he confessed, thus providing extremely significant evidence not available when the original decision to continue the investigation was made.