Roberto VALDEZ, Petitioner,

v.

Charles J. SCULLY, Superintendent,
Green Haven Correctional Facility,
Respondent.

No. 85 Civ. 0687 (EW).

United States District Court,
S.D. New York.

Feb. 5, 1986.

Roberto Valdez, petitioner pro se.

Mario Merola, Dist. Atty., Bronx County, Bronx, N.Y. (Steven R. Kartagener and Robert L. Shepherd, Asst. Dist. Attys., of counsel), for respondent.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, following his conviction in the New York State Supreme Court, Bronx County, of two counts of robbery in the first degree and two counts of assault in the first degree was sentenced as a second felony offender to concurrent indeterminate terms of imprisonment, from twelve and one-half years to twenty-five years on each of the robbery convictions, and from seven and one-half years to fifteen years on each of the assault convictions. Upon appeal, the judgments of conviction were unanimously affirmed without opinion by the Appellate Division. Leave to appeal to the Court of Appeals was denied.

Thereafter, in 1984, appearing *pro se*, petitioner filed a petition for a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleged the following violations of his constitutional rights: (1) that he was denied effective assistance of counsel upon his trial; (2) that there was insufficient evidence that the victim's injuries were serious within the meaning of the New York first-degree robbery statute,[1] and thus that his conviction violated the Due Process Clause of the Fourteenth Amendment; (3) that the adjudication that petitioner was a second felony offender was also in violation of his due process rights, because the admissible evidence presented was insufficient to establish beyond a reasonable doubt that he was the subject of the prior felony convictions; (4) that he was denied his right to counsel

when the trial court refused his request that new counsel be assigned to him for the purposes of sentence; and finally, (5) that the sentences imposed, the maximum allowed by law, were excessive because of his drug addiction. These were the same issues which he had raised in the New York State Appellate Division. This first federal habeas petition came before District Judge Kevin T. Duffy, and was denied because petitioner had failed to exhaust his state remedies as to each claim advanced.[2]

Petitioner then, in 1985, filed the instant application, confining his claims of violation of federal constitutional rights to the alleged deprivation of his right to effective assistance of counsel at his trial. His claim was based upon the following contentions: (1) that his trial counsel shifted to the defense the burden of proving reasonable doubt; (2) that his trial counsel lacked familiarity with state criminal law; (3) that trial counsel was unable to argue issues coherently; (4) that counsel made a written statement to the court at the time of sentencing which stated that he had not prepared adequately for trial; and (5) that the court denied petitioner's request to appoint new counsel in connection with his motion to vacate his conviction and for sentencing. The State did not dispute that petitioner had exhausted available state remedies as to the foregoing claim, but urged that his application for a writ be denied upon the merits.

This Court referred petitioner's application to Magistrate Leonard Bernikow to hear and report. The magistrate, in an interim report based upon petitioner's traverse, wherein he alleged for the first time that his trial counsel should have moved to dismiss the superseding indictment for failure to grant him a speedy trial, specifically relying upon *United States v. Marion*,[3] requested that the respondent answer this recently advanced claim. The prosecution submitted a detailed response, setting forth

1. N.Y.Penal Law § 160.15(1).

2. *See Valdez v. Smith*, 84 Civ. 3718 (S.D.N.Y. Aug. 10, 1984) (order dismissing petition).

3. 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

the history of the case as it progressed to trial, indicating that many continuances had been granted at the request of petitioner's trial counsel, as a result of other trial engagements, of illness of counsel or his wife, or simply as a result of counsel's failure to appear on occasions when the case was scheduled for trial. Each time a continuance was granted, the prosecution indicated to the court its readiness to proceed; trial finally commenced on December 8, 1980.

■ After receiving this response to petitioner's traverse, the magistrate, notwithstanding that petitioner had exhausted state remedies as to his initial claim, recommended that the petition "be dismissed without prejudice on account of petitioner's failure to exhaust his state court remedies with respect to the factual matter he seeks to add to the petition," that is, the claim of failure to move to dismiss the indictment on the ground that it constituted a violation of the Fifth Amendment because it gave the prosecution an unfair advantage under *United States v. Marion.* This new claim, as already noted, was presented only after petitioner's original petition had been referred to the magistrate and was sub judice. While the magistrate's report correctly notes that dismissal without prejudice is the appropriate disposition of petitions presenting a mixture of exhausted and unexhausted claims,[4] the Court disagrees with the magistrate's recommendation because petitioner's initial claim of denial of effective assistance of counsel, which is the only claim presented in the petition before the Court and which was confined to the conduct of petitioner's counsel during the course of the trial, was presented to the state courts, and is acknowledged by the State to be ripe for determination.

Upon a de novo consideration of the issue, and a detailed study of the entire trial record, including a word by word reading of the trial transcript and the sentencing

minutes, and review of the briefs of the parties before the Appellate Division, this Court is persuaded that petitioner's claim that he was deprived of his right to effective counsel upon his trial is without substance, and that his petition with respect to these enumerated claims should be dismissed upon the merits.

■ In seeking to sustain a claim of ineffective assistance of counsel, petitioner has the burden of proof. The Supreme Court, in its most recent discussion of the Sixth Amendment right to counsel, noted that the Amendment "recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair," and this requires "the effective assistance of counsel."[5] The Court concluded that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[6] Finally, the Court articulated these criteria on the issue:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... result-

---

4. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

5. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984).

6. *Id.,* 104 S.Ct. at 2064.

ed from a breakdown in the adversary process.[7]

The Court concluded that the proper standard for attorney performance is that of reasonably effective assistance within the range of competence demanded of attorneys in criminal cases, and held that when a convicted defendant contends that he received ineffective assistance of counsel, "he must show that counsel's representation fell below an objective standard." The ultimate issue is whether counsel's assistance was reasonably effective considering all the circumstances.[8]

Upon review of this record, as already noted, the Court is persuaded that petitioner received a fundamentally fair trial, and that the conduct of his counsel, viewed against all the surrounding circumstances, met an objective standard of adequate and competent representation. The trial evidence abundantly established the petitioner as the perpetrator of the crime charged. He did not testify or offer any defense. The evidence presented by the prosecution to support its charges was indeed substantial. The defendant, appearing *pro se* at the time of sentencing, with his trial counsel present, moved to set aside the verdict pursuant to New York law,[9] and for the assignment of new counsel. Specifically, he asserted that his counsel had not practiced in New York for twenty years, in consequence of which he was unfamiliar with New York law; that he had not investigated the case; and that he had prepared no pre-trial motions.

In addition to these allegations, petitioner presented a written statement of his trial counsel, in which counsel stated that he "never filed any motion or investigation [sic] of the facts concerning the case. Because of illness I did not represent Mr. Valdez to the best of my ability." This statement was puzzling to the trial judge, who questioned counsel's allegation that he had never filed motions. It appeared that petitioner, appearing *pro se*, had himself filed *Mapp*, *Huntley*, and *Wade* motions,

and that the hearings, which extended over several days, were conducted by his counsel. Indeed, counsel contended that he was successful in part, inasmuch as an identification by one witness was suppressed. Upon further questioning by the trial judge, counsel stated that during the trial, which was tried over a five- or six-day period, he did the best he could.

■ With respect to counsel's further signed statement that "[b]ecause of my illness I did not represent Mr. Valdez to the best of my ability," which the court suggested was somewhat misleading in light of the trial record and about which it requested clarification, trial counsel responded:

> I will recant on that. To the best of my ability, I did represent him. [The statement] was signed Christmas week. All I wanted was the truth of the fact. I wanted to impress upon Mr. Valdez and the Court I did not file those [pre-trial] motions. I adopted those motions.

Counsel's ill-advised attempt to assist his client after conviction through the submission of self-serving statements does not establish, judged by objective standards, that his representation deprived the defendant of his Sixth Amendment right to the effective assistance of counsel. The trial record indicates otherwise. The trial judge, who of course had the benefit of observing counsel's performance during the entire trial, specifically found that the attorney "represented his client adequately, competently, cross-examined the witnesses most adequately, summed up most competently, in the true tradition of an attorney representing a defendant." While this finding by the trial judge is not conclusive in this proceeding, it is entitled to a strong presumption of correctness in the absence of convicting evidence to the contrary.[10]

---

7. *Id.*

8. *Id.* at 2065.

9. *See* N.Y.Crim.Proc.Law § 330.30.

10. *See* 28 U.S.C. § 2254(d).

■ This Court's independent study of the trial record fully confirms the trial court's judgment. The contentions about counsel's alleged shortcomings dissolve upon a reading of the entire record. The claim that counsel shifted to the defendant the burden of proving reasonable doubt distorts the argument counsel actually made. The relevant portion of counsel's summation, taken in context, shows that counsel was advancing his contention that the prosecution had not established its burden of proof beyond a reasonable doubt:

I had told you you that the defendant sits here with a presumption of innocence and he has his presumption with him right throughout the trial. It is a strong presumption....

I also told you that the Prosecutor has the burden of proof. He has the burden of proving my client guilty beyond a reasonable doubt and he must carry that burden throughout the trial. I just told you about the fact that you should not take into consideration, as difficult as that is, believe me, that my client hadn't taken the stand, but I believe this jury has, for that reason, there wasn't one person that fell asleep, nobody yawning, everybody was listening to the testimony of the witnesses because *I had told you that I was going to try and I had the burden as best I could,* from all the facts that I knew about in the case, to show you that a reasonable doubt existed from the testimony of the Prosecutor's witnesses.[11]

Later, in continuing his closing argument, counsel stated:

Therefore, I would like to say that in the burden that I have had to try to dissect the testimony of the witnesses of the Prosecutor, I hopefully have fulfilled my function in showing you ... genuine reasonable doubt.[12]

It is clear from these excerpts that the "burden" counsel referred to in his closing was the burden of demonstrating that the prosecution had failed to carry *its* burden of establishing guilt beyond a reasonable doubt. Petitioner's strained argument is accentuated by his further contention that counsel in his summation "stripped" petitioner of his right to remain silent. The passages quoted above make it perfectly clear that the thrust of counsel's argument was to demonstrate the prosecution's failure to carry its own burden of proof, and to urge upon the jury the principle that a defendant's failure to testify in his own behalf must play no part in their factual determination. Indeed, at the very outset of his summation counsel told the jury:

I ... told you in my opening that I was going to dissect ... the testimony of the witnesses for the Prosecutor to show that a reasonable doubt would exist in this case.... [W]e have the right not to testify.... The Court is going to tell you that also. But, I know how difficult it is to accept that concept.[13]

■ Thus, a fair reading of the total argument requires rejection of petitioner's distorted contention that his counsel shifted the burden of proof to the defendant. Counsel's argument was instead directed to convincing the jury that the prosecution had failed in its proof, and to discussing the difficulty experienced by the average juror in accepting a defendant's right not to testify in his own behalf, and in preventing the exercise of the right from entering into the fact-finding process. Further militating against petitioner's claim on this issue, and disposing entirely of any claim of prejudice to petitioner's defense, is the court's detailed and specific charge on these matters.

In short, petitioner has not only failed to demonstrate that his counsel's performance was deficient, but has also failed to show that the alleged shortcomings prejudiced his defense. To date, the matter of petitioner's claim has engaged the time and attention of one judge of this court, who

---

11. Tr. at 232 (emphasis added). The underscored portion of the above quotation is the part upon which petitioner relies.

12. Tr. at 244–45.

13. Tr. at 231.

heard the original petition for the writ and dismissed for failure to exhaust state remedies; the time and attention of the magistrate, to whom the instant petition was referred; and the time and attention of this Court. There is no reason why the Court should not at this time reach the merits of petitioner's admittedly exhausted claims.

■ The last minute assertion by petitioner of the claim that his lawyer failed to move to dismiss the superseding indictment for alleged denial of petitioner's speedy trial right in reliance upon *United States v. Marion*[14] is upon the facts so patently without merit as not to require discussion. The offenses with which defendant was charged were committed on January 2, 1980; defendant was arrested on that day; the indictment was returned on January 10, 1980 and defendant was arraigned on January 24, 1980; the superseding indictment was returned on April 18, 1980; the first trial date was set for April 24, 1980; after continuances requested by defense counsel, as previously noted, the trial commenced on December 8, 1980; the jury returned its verdict on December 12, 1980.[15] On this record, leave to amend to include this claim in the instant petition would only serve to delay disposition of petitioner's claims, based upon his counsel's trial conduct, which are ripe for determination. Accordingly, the petition is dismissed upon the merits.

So ordered.

---

**14.** 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

**15.** This chronology makes clear that petitioner's reliance upon the Supreme Court's decision in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), is entirely misplaced. In *Marion*, the Court held that a three-year delay in the return of an indictment did not give rise to a speedy trial violation. While the Court indicated that pre-indictment delay resulting in "substantial prejudice," if used as "an intentional device to gain tactical advantage over the accused," might require dismissal of an indictment, it explicitly declined to fashion such a rule. 404 U.S. at 324, 92 S.Ct. at 465. *See also Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (post-indictment delay).