**UNITED STATES of America**

v.

**Robert Mario SENSI.**

**Cr. No. 86–0318.**

United States District Court, District of Columbia.

May 1, 1987.

Theodore H. Shmanda, Asst. U.S. Atty., Washington, D.C., Patricia C. Gunn, Office of International Affairs Crim. Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Jerris Leonard, Manatt, Phelps, Rothenberg & Tunney, Washington, D.C., Daniel J. McGuan, Silver Spring, Md., Richard Hirschfeld, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION
## AND ORDER

REVERCOMB, District Judge.

Defendant Robert Mario Sensi was regional sales manager for Kuwait Airways Corporation in Washington, D.C. On August 14, 1986, a complaint charging defendant with interstate transportation of stolen property in violation of 18 U.S.C. Sec. 2314 (1982) was filed in United States District Court for the District of Columbia. A warrant for his arrest issued the same day.

Mr. Sensi was provisionally arrested in London on August 22, 1986, based on a request by the United States Government to the Government of the United Kingdom, pursuant to Article VIII(1) of the Extradition Treaty between the United States and the United Kingdom, signed at London on June 8, 1972 (entered into force January 21, 1977), 28 UST 227; TIAS 8468 (the "Treaty"). On September 18, 1986, a grand jury investigating defendant's alleged conduct returned a twenty-six count indictment charging defendant with the felonies of mail fraud, possession and receipt of stolen securities, first degree theft and transportation of stolen securities.

The United States Government made a request for the defendant's extradition from England to the United States on September 26, 1986. On November 27, 1986, a hearing before the Stipendiary Magistrate at Bow Street was held on the request, and the Magistrate concluded the defendant was extraditable. The defendant did not appeal the finding by filing a writ of habeas corpus, and on December 19, 1986 he was extradited to the United States.

This matter is before the Court on defendant's Motion to Dismiss the Indictment and defendant's Motion to Bar Prosecution on All Counts of the Indictment. The Court has considered the memoranda in support of and in opposition to the motions, the entire record, and oral argument heard April 13, 1987.

■ In his Motion to Dismiss, defendant contends the United States government engaged in conduct which denied him a speedy trial and due process of law. Specifically, defendant alleges he was denied a speedy trial due to the government's decision to have him returned through formal extradition procedures, as well as the government's delay in returning an indictment and in forwarding to England the materials needed for extradition.

The Court concludes that the decision to proceed with formal extradition was well within the government's discretion of law enforcement. In addition, the indictment of defendant was returned within thirty days of defendant's initial arrest, as prescribed by Title 18, U.S. Code, Sec. 3161(b) (1982). The Court notes the exception to the Speedy Trial Act when the defendant is unavailable for trial. Title 18, U.S.Code, Sec. 3161(h)(3)(A) (1982). Although the government may have contributed to the defendant's unavailability due to formal extradition, the Court concludes the decision

was not unsound. Accordingly, defendant's Motion is DENIED on these grounds.

■ Defendant contends he was also denied a speedy trial and due process because the government did not forward sufficient extradition material to England within forty-five days of defendant's arrest. Article VIII of the Extradition Treaty requires the release of an arrested person if a request for extradition is not received within forty-five days of the provisional arrest. Once that request is made, and the requested party requires additional information, Article IX of the Treaty requires it to be submitted within the time required by that party. The Court concludes the United States initially submitted material supporting extradition within the forty-five day period, and that there is nothing in the record to indicate the government unreasonably delayed sending the additional requested material. The Court also notes that defendant's counsel initially agreed to give the Crown Prosecution Service time to contract the United States for supplementary evidence. (Def.'s Motion to Dismiss at 4).

■ Even if the Court were to conclude defendant had been detained improperly, "[i]t is well settled that the jurisdiction of the Court in which an indictment is found is not impaired by the manner in which the accused is brought before it. The fact that the arrest was unlawful or the removal proceedings illegal would not affect such jurisdiction." *Klink v. Looney*, 262 F.2d 119, 121 (10th Cir.1958); *accord Strand v. Schmittroth*, 251 F.2d 590, 600 (9th Cir. 1957). "A defendant in a criminal prosecution who has been extradited from a foreign country may not procure his discharge by showing that the extradition proceedings were irregular or illegal, or that they were not conducted in good faith." 31 Am.Jur.2d *Extradition*, Sec. 74, p. 981 (1967), *citing Pettibone v. Nichols*, 203 U.S. 192, 27 S.Ct. 111, 51 L.Ed. 148 (1906). Accordingly, defendant's Motion is DENIED on this ground as well.

■ Finally, defendant moves for dismissal on the grounds that delays prior to indictment and extradition caused substantial prejudice to his defense, thereby depriving him of due process of law. The standard set forth by the Supreme Court is that "the Due Process Clause of the Fifth Amendment would require dismissal ... [if] the pre-indictment delay caused substantial prejudice ... to a fair trial and ... the delay was an intentional device to gain a tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). The Court concludes there are no facts in the record to support an allegation of intentional delay in the three week hiatus between arrest and indictment, and that the indictment was returned within the statutory period. *See* Title 18 U.S.Code, Sec. 3161(b).

With respect to any other claims of due process denial through delay, the Supreme Court has held that the circumstances must be evaluated not only in terms of actual prejudice to the defendant, but also in terms of any legitimate reasons for the delay. *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977). The Court has concluded the government acted within its discretion in seeking formal extradition, and there is no sufficient indication of intentional delay in providing the complete materials necessary for extradition. Accordingly, the reasons for any delay were legitimate, and defendant's Motion is DENIED.

In his Motion to Bar Prosecution on All Counts of the Indictment, defendant contends the English Magistrate did not find sufficient evidence to extradite defendant for any of the charges in the indictment, and, in fact, did not extradite him for any of those charges.

Extraditions from the United Kingdom are governed by the Treaty and the English Extradition Act of 1870, as amended (the "Act"), which prescribe several preconditions. Primarily, a person may not "be detained or tried in [The United States] for any offense ... other than the extradition crime proved by the facts on which the surrender is grounded." Sec. 3(ii) of the Act; Article XII of the Treaty. This pre-

requisite encompasses what is known as the "rule of speciality."

The United States challenges defendant's contentions, asserting first that the rule of speciality confers a privilege which can be invoked only by the government surrendering an extraditee. The United States alleges defendant has no rights under the Treaty to challenge his extradition.

■ Although the Treaty between the United States and The United Kingdom is a contract between the governments of those nations, it is also the supreme law of this land by virtue of the Constitution (Article VI). For the United States "government to detain [a] person for trial on any [non-extradited] charge would be not only an infraction of the contract between the parties to the treaty, but also a violation of the supreme law of this land in a matter directly involving his personal rights." *Ex Parte Hibbs*, 26 F. 431 (D.Or.1886). Therefore, the Court concludes it is sound to allow defendant to invoke the doctrine in challenging the manner of his extradition. *See Id.* at 430–31, and cases cited therein.

Turning to the specific counts in the indictment, the United States contends it was not necessary to present all of the indictment charges to the English Magistrate nor for the Magistrate to extradite the defendant on each specific count. The government alleges the *evidence* presented to the Magistrate was sufficient to make out probable cause for arrest on each count, and that the Magistrate was only required to conclude that the conduct, if committed in England, would be a triable offense there.

■ Although the charges of the indictment may not correspond exactly to English offenses, it is the *facts* or underlying *conduct* supporting the charges which must correlate. *See* the Treaty, Article XII; The Act, Sec. 3(2); *In Re Nielsen,* 2 W.L.R. 737 (1984) (British Weekly Law Reports); *United States Government v. McCaffery,* 2 All E.R. 570 (1984) (All England Law Reports). Specifically, if the Bow Street Magistrate finds sufficient evidence according to English Law to determine that the conduct complained of, had it

occurred in England, would justify committal for trial in England for an extraditable offense, then the person whose extradition is sought is deemed to be extraditable. *Id.* However, the rule of speciality will continue to supply a strong safeguard for the person who is extradited.

[I]t is the facts proved before the magistrate at the hearing of committal proceedings against the fugitive criminal under Sections 9 and 10 [of the Act] ... that determine the only crime or crimes under [United States] law for which the fugitive criminal who has been surrendered can be tried in [the United States].

*In re Nielsen,* 2 W.L.R. at 749.

The extraditable offenses are listed in a Schedule to the Act and a Schedule and Protocol of Signature to the Treaty. The Court concludes all of the indictment counts are within the scope of these extraditable offenses. *See McCaffery,* 2 All E.R. 570. It must now be determined whether the offenses in the indictment were established by the facts presented for extradition.

■ The Magistrate considers evidence presented to support an "Order to Proceed", which is prepared by the Secretary of State of England. The "Order" attempts to list the English crimes which are made out by the facts supporting the charges against the United States. The Magistrate concludes which English charges are satisfied, and issues an Extract from the Extradition Register of Bow Street Magistrates Court.

The record of the defendant's extradition process which is before this Court contains the Magistrate's Extract of November 27, 1986, an affidavit of Clive Nicholls, Queen's Counsel, and two United States government transmittals. The Extract contains eighteen charges of theft, which the Magistrate concluded were made out by the evidence presented against the defendant, according to English law.

Defendant contends that since the Magistrate may only consider charges presented in the "Order," and the "Order" only con-

tained theft charges, the magistrate could not have found there was sufficient evidence to prosecute defendant on any non-theft charges in the indictment.[1] Further, defendant contends he was only *extradited* for theft charges and therefore cannot be tried for non-theft charges in the United States.

The record discloses all of the documents which were presented to the English Magistrate in support of extradition. These transmittals from the United States Government contain affidavits and records from the Department of Justice, the F.B.I., American Security Bank, the Embassy of Kuwait and Kuwait Airways Corporation. Although there is no transcript available from the extradition proceedings, the Court will follow a presumption of regularity in those proceedings and conclude that the facts contained in the transmittals were adequately set forth for the following reasons:

1) The initial transmittal received September 26, 1986, contained sufficient facts to conclude defendant had committed the extraditable crimes of theft, and receipt of stolen property, however, the Crown Prosecution Service requested additional documentation before it began extradition;

2) The second transmittal received November 27, 1986 contained facts which primarily supported the crimes of mail fraud and transportation of stolen property;

3) The affidavit of Clive Nicholl's Queen's Counsel states that the evidence in support of the United States Government's request was presented to the Magistrate;

4) The defendant did not challenge the sufficiency of evidence presented at the time of the extradition hearing, nor does he now contend that the evidence transmitted in support of the government's request was not presented to the Magistrate, or that it was insufficient to support trial here on all counts of the indictment; and

5) The Court's own analysis of the evidence reveals it is sufficient to support each count of the indictment as follows:

| Indictment Count | Transmittal Appendix and Page(s) of Supporting Material | | |
|---|---|---|---|
| 1 | N2, | O1, | P2 |
| 2 | N3, | O1, | P2 |
| 3 | N3, | O1, | P2–3 |
| 4 | N3, | O1, | P3 |
| 5 | N3, | O2, | P3 |
| 6 | N4, | O2, | P3 |
| 7 | H3, | M3 | |
| 8 | H3, | M3 | |
| 9 | H3, | M3 | |
| 10 | H3, | M3 | |
| 11 | H3, | M3 | |
| 12 | H3, | M3 | |
| 13 | H3, | M3 | |
| 14 | H3, | M3 | |
| 15 | H3, | M3 | |
| 16 | O2, | P3 | |
| 17 | O2, | O4 | |
| 18 | O2, | P4 | |
| 19 | O2 | | |
| 20 | O2–3, | P4 | |
| 21 | O2–3, | P5 | |
| 22 | O2, | P4 | |
| 23 | O2–3, | P5 | |
| 24 | O2–3, | P5 | |
| 25 | O2, | P4 | |
| 26 | O2–3, | P5 | |

Defendant interprets the rule of speciality as barring prosecution on any indictment count for which he wasn't extradited, or found extraditable. Defendant relies primarily on *Ex parte Hibbs*, 26 F. 421 (D.Or.1886), which held that an extraditee may only be tried on the charges for which he was extradited, even if other extraditable charges were presented to the extraditing magistrate. In *Hibbs*, the United States sought the extradition of defendant from Canada on charges of forgery and uttering. The Canadian Magistrate was presented evidence supporting both charges, however, only extradited the defendant for the crime of forgery. The District Court for the District of Oregon in interpreting a treaty substantially similar

---

**1.** Defendant also alleges Counts 1–5 are fatally flawed because they allege checks were mailed on May 6, 1986 yet offenses set forth before the English Magistrate allege the offenses occurred on or about May 5. The Court rejects defendants argument given the "on or about" language in the offense, as well as the statement of Helen Garlick of the Crown Prosecution Service that the date would not be considered an unamendable material averment. *See* Affidavit of Helen Garlick at 2–3.

to the U.S.–U.K. Treaty, concluded that because defendant was charged with both crimes, yet only committed and surrendered for forgery, he could only be tried for that charge.

The Court notes that the crimes of uttering and forgery were both prosecutable in Canada, as opposed to the charges not recognized under English law in the case at bar. Given that distinction, along with the Canadian Magistrate's specific decision not to extradite Hibbs on the uttering charge, this Court must conclude those factors make *Hibbs* distinguishable.

To conclude otherwise would bar prosecution in the United States on any charge for which there is no corresponding charge in the extraditing country, even if the conduct in question would constitute criminality there. Alternatively, such an inflexible approach would require an extraditing nation to interpret the laws of a foreign state with which it is generally unfamiliar. Accordingly, the Court rejects defendant's argument that he may only be prosecuted on the English charges for which he was extradited.

The United Kingdom interprets the Treaty with the United States in accordance with her own law and interpretation thereof. A primary tenet of international law requires this nation to respect the legal principles of its fellow sovereign States, whether or not they accord with ours, provided they do not infringe on the rights of our citizens. The law of England requires that its extraditing Magistrates not be concerned with foreign criminal law, but rather "decide whether the evidence presented would, *according to the law of England,* justify the committal for trial of the accused." *In re Nielsen,* 2 W.L.R. at 748.

The Court concludes that it should respect England's interpretation of its Extradition Act and Treaty. The rule of speciality will sufficiently prevent any abuse of an extraditee's rights in the United States, since the defendant may challenge prosecution of any charge for which there were insufficient facts to support a request for extradition.

The Court concludes there were sufficient facts proved in the English extradition process, to validly prosecute defendant on all counts of the indictment. Accordingly, his Motion to Bar Prosecution is DENIED.

SO ORDERED.