**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-5205**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

WAYNE BERNARD GUNTHER, JR.,

             Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Catherine C. Blake, District Judge.
(1:09-cr-00099-CCB-1)

Submitted: August 22, 2012        Decided: October 16, 2012

Before WILKINSON and MOTZ, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

Jonathan P. Van Hoven, JONATHAN P. VAN HOVEN, PA, Baltimore,
Maryland, for Appellant.   Rod J. Rosenstein, United States
Attorney, John F. Purcell, Jr., Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a jury trial, Wayne Bernard Gunther, Jr. was convicted of two counts of possession with intent to distribute 500 grams or more of cocaine, 21 U.S.C. § 841(a)(1), in the United States District Court for the District of Maryland. He was sentenced to concurrent terms of seventy-five months' imprisonment.

On appeal, Gunther first contends that the district court erred when it denied his motion to suppress. "[W]e review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Farrior, 535 F.3d 210, 217 (4th Cir. 2008).

The facts surrounding this contention are as follows. On January 23, 2006, Baltimore City Police Detective Milton Lynn conducted a traffic stop in Baltimore City on a silver Cadillac automobile driven by a person who identified himself as Gabriel Levroney. Levroney did not have his driver's license. While trying to ascertain the identity of the driver, Detective Lynn observed that Levroney apparently tried to conceal an envelope that he pushed down between the front seats. During the traffic stop, a drug detection canine that Detective Lynn had called to the scene scanned the exterior of the Cadillac automobile and gave a positive alert for the presence of narcotics on all four of the tires, as well as the driver and passenger side door

2

seams. The positive alert by the canine resulted in the search of the Cadillac automobile, during which Detective Lynn discovered an unopened box of baggies and an unopened box of baking soda, both of which are associated with the packaging of narcotics. Detective Lynn also discovered the above-mentioned envelope, which was found to be addressed to Levroney at "7905 Valley Manor Road, [Apartment] F[,] . . . Owings Mills, MD." (J.A. 126).

A few days after the stop of the Cadillac automobile, Detective Lynn conveyed the above details of the encounter with Levroney, as well as his suspicion that Levroney was involved in drug trafficking, to Detective Jason Sutton of the Baltimore County Police Department, given that 7905 Valley Manor Road is located in Baltimore County.

On January 31, 2006, Detective Sutton conducted surveillance at 7905 Valley Manor Road during which he observed that the Cadillac automobile stopped by Detective Lynn on January 23 was parked at that address. On the evening of March 9, 2006, Detective Sutton conducted further surveillance at 7905 Valley Manor Road in the course of which he observed an individual, later found to be Gunther, exit the building carrying a white trash bag and a gold gift bag. Gunther dropped the white trash bag in a dumpster and carried the gold gift bag to a Toyota automobile, which Gunther entered and drove away.

3

The Toyota automobile was found to be registered to Miesha Foreman, 7905 Valley Manor Road, Apartment F, the same address that Detective Lynn had observed on the envelope in the Cadillac automobile driven by Levroney. Detective Sutton followed the Toyota automobile. Upon noticing that Gunther appeared not to be wearing a seat belt, in violation of Maryland law, Detective Sutton requested that a marked patrol vehicle conduct a traffic stop. Anticipating a traffic stop of the Toyota automobile, Detective Sutton also requested that a drug detection canine be brought to the scene.

The patrol car that responded to the request that a traffic stop be made on the Toyota automobile was operated by Officer Jeffrey Miller. Although Officer Miller had received information that the driver of the Toyota automobile was not wearing a seat belt, he did not personally observe that violation. Thus, Officer Miller did not stop the Toyota automobile based on a seat belt violation. Instead, Officer Miller executed a traffic stop of the Toyota automobile for a speeding violation after he paced it for over two miles while it was traveling sixty-two miles per hour in a fifty-five miles per hour zone on Interstate 695. The time of the traffic stop of the Toyota automobile was 9:02 p.m.

Upon being approached by Officer Miller, Gunther produced his driver's license but was unable to locate the

4

vehicle registration after looking for it for a minute or two. Gunther was permitted to use a cell phone to call his girlfriend, the owner of the Toyota automobile. After a minute or so, Gunther located the registration card and presented it to Officer Miller. Upon receipt of the registration card, Officer Miller returned to his patrol car to conduct the several computerized record checks that are routinely made during a traffic stop. According to Officer Miller, it took between approximately one and five minutes to complete each of these four checks, after which he prepared two traffic warning citations, each of which took about two minutes to complete. Officer Miller observed a gold gift bag in the front passenger seat of the Toyota automobile during his encounter with Gunther.

While Officer Miller was occupied with the traffic stop, other officers arrived at the scene. Detective Sutton was briefly at the scene, but upon the arrival of his colleague, Detective Scott Griffin, Detective Sutton returned to 7905 Valley Manor Road to search the dumpster into which Gunther had dropped the white trash bag. Upon Detective Griffin's arrival, he consulted with another officer who was already on the scene. Detective Griffin was informed that Gunther had consented to the search of his person but had declined to allow the Toyota automobile to be searched. During his conversation with Detective Griffin, Gunther stated that he came from "up the

5

road" and was headed to see family in Salisbury. (J.A. 283). During this exchange, Gunther would not provide the address from which he was traveling. Detective Griffin testified that when he inquired about the contents of the gold gift bag, Gunther stated that the bag contained a shirt for a friend in Salisbury. However, Gunther would not provide the name of the friend, and he became visibly nervous when Detective Griffin's questions focused on the gold gift bag.

While Officer Miller was still in his patrol car completing the routine traffic checks associated with the stop, at approximately 9:31 p.m., Detective Sutton reported to the law enforcement officers at the scene of the traffic stop that he had found what was believed to be marijuana and drug residue in a white trash bag recovered from the dumpster at 7905 Valley Manor Road, and that the trash bag also contained papers for 7905 Valley Manor Road, Apartment F.

Officer Miller was still in his patrol car conducting computer checks when the drug detection canine arrived at 9:32 p.m. Within a couple of minutes, the canine alerted positively to the passenger door adjacent to the gold gift bag on the front seat. Based on that alert, the gift bag was searched. It was found to contain a one-kilogram brick of cocaine.

Following his arrest, Gunther was interviewed by law enforcement agents. Gunther provided a written statement in

6

which he admitted that he paid $24,500.00 for the cocaine; that he purchased the cocaine in Philadelphia; and that he went to Philadelphia every three weeks to buy cocaine. During a search of 7905 Valley Manor Road, Apartment F the following day, law enforcement agents recovered a tape-wrapped package of cocaine; two plastic bags, each containing an additional 7.5 ounces of cocaine, and a Bersa .380 semi-automatic handgun.

In the district court, Gunther challenged the scope and duration of the traffic stop. At the suppression hearing, Officer Miller testified that he did not present the traffic warning citations to Gunther as quickly as he might have absent the ongoing investigation. Consequently, the district court addressed whether there was sufficient articulable suspicion to extend the stop to 9:31 p.m., when Detective Sutton completed the search of the dumpster and relayed his findings to the law enforcement officers at the scene of the traffic stop. In the district court's view, if the traffic stop was permissible up to 9:31 p.m., the continued detention from that point on was permitted based on the evidence obtained from the white trash bag by Detective Sutton at the dumpster, namely, marijuana, drug residue, and papers for 7905 Valley Manor Road, Apartment F. Given the district court's estimate of the period of detention justified by the traffic stop alone as being between ten and fifteen minutes, which would have taken until the 9:12 to 9:17

7

p.m. time frame, there was an extension of approximately fourteen to nineteen minutes for which additional reasonable suspicion was necessary. According to the district court, the extension of the traffic stop to 9:31 p.m. was justified under the circumstances presented to the law enforcement officers. In so holding, the district court relied on the evidence observed by Detective Lynn and Gunther's evasive behavior/answers at the traffic stop.

A temporary detention of an automobile, even if only for a limited time or purpose, constitutes a Fourth Amendment seizure. Whren v. United States, 517 U.S. 806, 809-10 (1996). Because a routine "traffic stop is . . . more like an investigative detention than a custodial arrest," its limitations must be evaluated under the dual inquiry set out in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Guijon-Ortiz, 660 F.3d 757, 764 (4th Cir. 2011) (internal quotation marks omitted). Under this analysis, we determine whether the stop "was justified at its inception" and "whether the continued stop was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." Id. (internal quotation marks omitted).

Regarding the first Terry inquiry, if an officer has probable cause or reasonable suspicion to believe a suspect has violated a traffic law, the officer's decision to stop the

8

suspect's car is reasonable under the Fourth Amendment, regardless of the officer's subjective motivation for the stop. United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993). In evaluating the second inquiry, we must consider whether the officer "'diligently pursue[d] the investigation of the justification for the stop.'" Guijon-Ortiz, 660 F.3d at 768 (quoting United States v. Digiovanni, 650 F.3d 498, 509 (4th Cir. 2011)).

A lawful routine traffic stop justifies detaining the car's occupants for the time necessary to request a driver's license and registration, run a computer check, and issue a citation. Digiovanni, 650 F.3d at 507. The officer also is permitted to request passenger identification or inquire into unrelated matters, as long as doing so does not measurably prolong the length of the traffic stop. Guijon-Ortiz, 660 F.3d at 765. However, the officer may not "'definitively abandon[] the prosecution of the traffic stop and embark[] on another sustained course of investigation'" absent additional justification. Id. at 766 (quoting United States v. Everett, 601 F.3d 484, 495 (6th Cir. 2010)). In other words, if a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion of additional criminal activity. Digiovanni, 650 F.3d at 507.

9

While there is no "precise articulation of what constitutes reasonable suspicion," United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008) (citation and internal quotation marks omitted), "a police officer must offer specific and articulable facts that demonstrate at least a minimal level of objective justification for the belief that criminal activity is afoot." Id. at 337 (citation and internal quotation marks omitted). Officers may use their "training and expertise" to identify sets of factors which are "individually quite consistent with innocent travel" yet "taken together, produce a reasonable suspicion of criminal activity." Id. at 336–37 (citation and internal quotation marks omitted).

The initial stop of the Toyota automobile is not seriously in dispute. But Gunther does contend that the law enforcement officers unlawfully prolonged the traffic stop. This contention is without merit.

As noted above, if a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion of other criminal activity, Digiovanni, 650 F.3d at 507, a showing of which must include "specific and articulable facts that demonstrate at least a minimal level of objective justification for the belief that criminal activity is afoot," Branch, 537 F.3d at 337 (citation and internal quotation marks

10

omitted).  Here, the scope and duration of the stop were not unreasonable because there was reasonable suspicion present to extend the length of the stop.  Gunther was observed leaving a location, in a vehicle registered to that location, carrying a package.  The law enforcement officers had reason to believe that the location was linked to drug trafficking by factors that included a positive alert by a drug detection canine on another vehicle linked to that location, the discovery of drug packaging materials from that vehicle, the attempt by the driver of that vehicle to conceal an envelope bearing the address of the location, and the later surveillance of that vehicle at the location.  Gunther also was evasive, both in his behavior and his answers to Detective Griffin's questions, during the ten to fifteen minute time frame recognized by the district court as necessary to conclude the initial stop.  These facts permitted the short extension of the stop to 9:31 p.m. to dispel the law enforcement officers' suspicions.  Moreover, once Detective Sutton found the evidence in the white trash bag in the dumpster and relayed his findings to the law enforcement officers at the scene of the traffic stop, a further detention of Gunther was permitted.  In sum, we hold there was no Fourth Amendment violation in this case.

Gunther also contends that, by delaying the filing of the indictment, the government violated his Fifth Amendment

right to due process of law. We review this claim de novo. Belbruno v. Ashcroft, 362 F.3d 272, 278 (4th Cir. 2004).

"[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324 (1971). "This is a heavy burden because it requires not only that a defendant show actual prejudice, as opposed to mere speculative prejudice, but also that he show that any actual prejudice was substantial--that he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." Jones v. Angelone, 94 F.3d 900, 907 (4th Cir. 1996) (citations omitted).

In this case, Gunther fails to demonstrate any actual prejudice. Gunther claims that actual prejudice is present because he was unable to corroborate his testimony that he was wearing a seat belt at the time of the traffic stop. According to Gunther, due to the delay, he no longer had access to the Toyota automobile by the time of the suppression hearing and he was therefore unable to prove that, because the Toyota automobile had an automatic restraint system, he necessarily was

12

wearing a seat belt at the time he was stopped. However, whether the Toyota automobile could have been produced did not actually prejudice Gunther's case because he was stopped for speeding and not a seat belt violation.

Alternatively, Gunther claims that he was actually prejudiced because, but for the delay, Detective Griffin's testimony concerning Gunther's travel plans would have been contradicted by the testimony of another officer at the scene. Although it is unclear how Gunther's defense was meaningfully impaired by this officer's alleged faded memory, Detective Sutton's police report plainly memorializes the substance of the testimony Gunther sought from this officer. Accordingly, we conclude that there was no Fifth Amendment violation in this case.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED