People v Innab (2020 NY Slip Op 01363)





People v Innab


2020 NY Slip Op 01363


Decided on February 26, 2020


Appellate Division, Second Department


Chambers, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 26, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
CHERYL E. CHAMBERS
JEFFREY A. COHEN
VALERIE BRATHWAITE NELSON, JJ.


2016-01072
 (Ind. No. 3217/12)

[*1]The People of the State of New York, respondent,
v
Raed Innab, appellant.



APPEAL by the defendant from a judgment of the County Court (Fernando Camacho, J.), rendered December 15, 2015, and entered in Suffolk County, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.



Jonathan I. Edelstein, New York, NY, for appellant.
Timothy D. Sini, District Attorney, Riverhead, NY (Karla Lato and Timothy Finnerty of counsel), for respondent.



CHAMBERS, J.


OPINION & ORDER
In 2015, the defendant was convicted of a murder that had been committed more than 30 years earlier. The principal issue on appeal is whether the defendant's due process rights were infringed as a result of a 28-year preindictment delay. We find that they were not, and that the judgment of conviction should be affirmed.
I. Relevant Facts
At a pretrial hearing conducted pursuant to People v Singer (44 NY2d 241), the People's evidence showed that the victim was found badly beaten and unconscious on a roadside in Suffolk County on August 21, 1984, and died shortly thereafter without regaining consciousness. A passing motorist observed two unknown white males assaulting the victim and leaving the scene in a late-model, dark-colored Cadillac. The police recovered a number of blood-stained items from the scene, including, among other things, two knives, a sheath, a tire iron, gauze pads, three business cards, and the victim's clothing.
Within days, the police had reason to believe that the murder was related to a longstanding dispute between the victim's family and the defendant's family, and was in direct retaliation for the victim's killing of the defendant's uncle in 1976. In February 1985, an anonymous informant implicated the defendant in the murder and mentioned that one of the defendant's hands had been cut during the attack. The police subsequently learned that the defendant had in fact been treated at Victory Memorial Hospital in the early morning hours of August 22, 1984, for lacerations to two of his fingers. However, the defendant, who was reportedly working in his family's grocery store on the day of the murder, had told hospital personnel that he had cut his fingers while operating a meat slicer. Moreover, in an interview with the police in 1989, the defendant denied any involvement in the murder. Other members of the defendant's family were also interviewed by police—including a cousin who owned a dark-colored Cadillac with a missing tire iron.
Due to the lack of additional evidence specifically linking the defendant to the murder, and the difficulty in excluding several of the defendant's family members as possible suspects, the case remained cold until February 2008, when the defendant pleaded guilty to an [*2]unrelated felony charge and was required to submit a DNA sample for the Combined DNA Index System (hereinafter CODIS) database. In March of 2008, the defendant's DNA profile was entered into CODIS. Shortly thereafter, in April 2008, the police submitted the victim's clothing for DNA analysis. Forensic analysis of one of the items of clothing—a blood stain cutting from one of the victim's socks—generated a full, single source DNA profile of an individual other than the victim. The analysis of a second blood stain cutting from the victim's pants generated a DNA mixture, the major contributor of which was the same individual whose profile appeared in the blood stain recovered from the victim's sock. In January 2010, that profile was run through CODIS and was matched with the defendant's profile.
At that point, the case was reactivated and transferred to the major crimes unit. Several items that had not previously been tested were sent for DNA analysis, and other items were retested, in an effort to identify the second unknown male suspect. The police ascertained that two potential suspects had died, but a third suspect, as well as a number of fact witnesses, were still alive. After re-interviewing fact witnesses and excluding the third suspect through additional DNA testing, the police began looking for the defendant in December 2012 and arrested him in connection with the murder on January 2, 2013.
II. Legal Analysis
The State of New York does not draw a fine distinction between due process standards (see United States v Marion, 404 US 307; People v Singer, 44 NY2d 241) and speedy trial standards (see Dillingham v United States, 423 US 64; People v Staley, 41 NY2d 789; People v Taranovich, 37 NY2d 442) when dealing with delays in prosecution, and the factors utilized to determine if a defendant's rights have been abridged are largely the same in both cases (see People v Wiggins, 31 NY3d 1, 4; People v Vernace, 96 NY2d 886, 887). Specifically, the relevant factors to be considered are: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (People v Taranovich, 37 NY2d at 445; see People v Wiggins, 31 NY3d at 3).
Where, as here, there has been a protracted preindictment delay over a period of years, the burden is on the prosecution to establish good cause (see People v Decker, 13 NY3d 12, 14; People v Singer, 44 NY2d at 254). Nevertheless, while an unjustifiable delay in commencing prosecution may require dismissal even though no actual prejudice to the defendant is shown (see generally People v Lesiuk, 81 NY2d 485, 490), "a determination made in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons, will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense" (People v Singer, 44 NY2d at 254; see People v Wiggins, 31 NY3d at 5).
Here, the preindictment delay of more than 28 years was undoubtedly extraordinary (see People v Mattison, 162 AD3d 905), a fact that weighs in favor of the defendant (see People v Decker, 13 NY3d at 15). However, under the circumstances presented, the People met their burden of demonstrating good cause for the delay (compare People v Johnson, 28 NY3d 1048, People v Decker, 13 NY3d 12, People v Vernace, 96 NY2d at 888, and People v Metellus, 157 AD3d 821, 822-823, with People v Montague, 130 AD3d 1100, People v Wheeler, 289 AD2d 959, People v Gallup, 224 AD2d 838, and People v Andine, 214 AD2d 373). The record of the Singer hearing supports the hearing court's determination that the People acted in good faith in deferring commencement of the prosecution until after they were able to match the defendant's DNA profile with the one found on some of the blood-stained items recovered from the crime scene.
While the defendant correctly points out that DNA testing of the crime scene evidence could have been performed years earlier, there is nothing to suggest that such tests would have yielded any meaningful information, as the defendant's own DNA profile was not available to investigators for comparative purposes until it was entered into CODIS in March of 2008. Nor are we persuaded by the defendant's contention that the People could have sought a court order compelling the defendant to produce a DNA sample for analysis before 2008 (see Matter of Abe A., 56 NY2d 288). Considering that the outcome of such a proceeding, under the particular facts of this case, would be very difficult to predict (compare Matter of Abe A., 56 NY2d 288, and Matter of Chaplin v McGrath, 215 AD2d 842, with Matter of Valdes v DeRosa, 28 AD3d 781), we are loath to saddle the People with an affirmative duty to embark upon a course that could ultimately prove unsuccessful, and possibly jeopardize an ongoing investigation.
In the end, given the very serious nature of the charge, the fact that the defendant [*3]remained at liberty for over 28 years—except for brief periods of incarceration on unrelated convictions of forgery and identity theft—and the defendant's failure to demonstrate undue prejudice arising from the delay, we are satisfied that the defendant was not deprived of his due process right to prompt prosecution (see People v Vernace, 96 NY2d at 888; People v Taranovich, 37 NY2d at 445-446; People v Mattison, 162 AD3d 905, 906-907; People v Bryant, 65 AD2d 333, 337).
III. Remaining Contentions
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
Contrary to the defendant's contention, the County Court providently exercised its discretion in precluding him from cross-examining a prosecution witness regarding a prior inconsistent statement that had little or no probative value on any material issue, and in precluding the defendant from introducing the statement into evidence (see People v Duncan, 46 NY2d 74, 80). Accordingly, there was no impairment of the defendant's right to confront witnesses and present a defense (see Crane v Kentucky, 476 US 683, 689-690; Delaware v Van Arsdall, 475 US 673, 678-679).
The defendant's contention that certain remarks made by the prosecutor during summation were improper and deprived him of a fair trial is unpreserved for appellate review (see CPL 470.05[2]). In any event, many of the challenged remarks were either permissible rhetoric, fair comment on the evidence, or a fair response to arguments presented in the defense summation (see People v Galloway, 54 NY2d 396, 399; People v Ashwal, 39 NY2d 105, 109). To the extent that some of the prosecutor's other comments were improper, any error was not so egregious as to have deprived the defendant of a fair trial (see People v Gomez, 153 AD3d 724, 726; People v Portes, 125 AD3d 794; People v Stevens, 114 AD3d 969, 970).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
Accordingly, the judgment is affirmed.
BALKIN, J.P., COHEN and BRATHWAITE NELSON, JJ., concur.
ORDERED that the judgment is affirmed.
ENTER:
Aprilanne Agostino
Clerk of the Court